[L.A. No. 30627. Dec. 23, 1976.]

KAREN KAY LARCHER, a Minor, etc., et al.,
Plaintiffs and Appellants, v.
JOHN F. WANLESS et al., Defendants and Respondents.

648

**COUNSEL**

Harney & Moore, Harney, Bambic & Moore, Schall, Butler, Boudreau & Gore, David M. Harney and W. J. Schall for Plaintiffs and Appellants.

Holt, Rhoades & Hollywood, Dan H. Deuprey, Higgs, Fletcher & Mack, David D. Randolph and Gregg C. Sindici for Defendants and Respondents.

Hassard, Bonnington, Rogers & Huber, Howard Hassard, Charles F. Bond II, Musick, Peeler & Garrett and James E. Ludlam as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**MOSK, J.**—We are here called upon to construe Code of Civil Procedure section 340.5, the statute of limitations for medical malpractice suits, as it applies to wrongful death actions.

At the time this action arose, section 340.5 provided in relevant part: "[i]n an action for injury or death against a physician or surgeon . . . based upon such person's alleged professional negligence . . . [the statute of limitations shall be] four years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever first occurs."[1]

The instant controversy centers on the meaning of the word "injury" as used in the statute to designate the event which starts the running of the overall four-year limitation period, and the discovery of which is the basis of the shorter one-year limitation. We conclude that as applied to wrongful death actions arising from alleged medical malprac-

[1] The statute further provided: "This time limitation shall be tolled for any period during which such person has failed to disclose any act, error, or omission upon which such action is based and which is known or through the use of reasonable diligence should have been known to him."

The Legislature made significant changes in this section in 1975. The limitation period was shortened from four to three years after the date of injury, while the alternative one-year period was retained. The tolling provisions of the statute were altered substantially, and language was added governing actions brought by minors. The scope of the statute was modified to include actions against "a health care provider based upon such person's alleged professional negligence," and definitions of "health care provider" and "professional negligence" were added.

However, the language we construe here, providing that the limitation periods begin on "the date of injury" or the date "the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury," remains unchanged in the 1975 revision.

tice, "injury" as used in section 340.5 refers to the death, with its allegedly wrongful cause, which gives rise to the lawsuit.[2]

Plaintiffs, heirs of Mrs. Virginia Larcher, allege that malpractice committed by defendant doctors caused her death. They also seek a judgment against a medical clinic in which the doctors allegedly worked.[3]

The court granted a motion to strike all causes of action against these defendants, apparently on the ground that plaintiffs were barred by the one-year limitation of section 340.5.[4] The court treated the motion to strike, which was accompanied by affidavits and an exhibit, as a motion for summary judgment. (See *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 167-169 [95 Cal.Rptr. 623, 486 P.2d 151].) Finding no triable issue of fact regarding the application of the statute, the court entered judgment for defendants.

Defendants' motion was based in part on facts stated in the complaint.[5] The complaint alleges that between February 1966 and July 1968 defendant doctors negligently prescribed for plaintiffs' decedent an oral contraceptive known as "Ortho Novum." It further alleges that decedent was a patient of defendants "from approximately 1965 up to and including 1970."

Presented by defendants with their motion was evidence which tended to show that the decedent and at least one of the plaintiffs—decedent's husband—were made aware of the physical harm allegedly produced by the malpractice as early as July 1968. This evidence was the file in a product liability action initiated in July 1972 by decedent and her

[2]This conclusion therefore does not affect the broad meaning given to the word "injury" in section 340.5 by *Sanchez* v. *South Hoover Hospital* (1976) *ante*, pp. 93, 99 [132 Cal.Rptr. 657, 553 P.2d 1129], in which a majority of this court held that "injury" denoted "both a person's physical condition *and* its 'negligent cause.'" (Italics in original.)

[3]The complaint is not explicit as to the precise theory on which plaintiffs seek recovery from defendant clinic. Because we hold that section 340.5 does not bar this suit against either the individual doctors or the clinic, we do not now consider the possible bases, if any, of the clinic's liability.

[4]The order does not specify whether it is based on the one-year or the four-year period of section 340.5. However, only the one-year bar was invoked in defendants' motion to strike, the motion granted by the court. The four-year bar, raised by way of general demurrer, was not the subject of a ruling by the trial court.

[5]This reliance is permissible under *Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 148-149 [60 Cal.Rptr. 377, 429 P.2d 889].

husband seeking to recover for personal injuries and loss of services from the manufacturers and distributors of Ortho Novum. The complaint therein alleged that as a result of decedent's ingestion of Ortho Novum she had "during the month of July, 1968 . . . experienced a complete loss of consciousness, requiring brain surgery" and that thereafter she "was severely paralyzed and unable to care for her person."

The earlier complaint clearly revealed that decedent and her husband, as well as the attorney for all the plaintiffs in this action, were aware of the potentially negligent cause of decedent's injuries no later than the July 1972 date when the prior lawsuit was filed. Indeed, the 1972 complaint states that "within one year from the date of filing the within action . . . plaintiff first discovered that there was a relationship between the use of the medication described and the injury suffered . . . ." Defendants also introduced the affidavit of one Dr. Assam which declared that in August 1972 he had "fully discussed" with the attorney for the plaintiffs here "the possible causal relationship between the medical condition of plaintiffs' decedent and the use by plaintiffs' decedent of a drug known as Ortho Novum . . . ."

The death of decedent, according to the complaint filed in the instant matter, occurred on January 12, 1974. The present wrongful death action was promptly filed slightly more than two months later, on March 21, 1974. On March 25, 1974, the earlier product liability action of decedent and her husband was dismissed with prejudice.

The trial court apparently concluded that, even tested by summary judgment standards, the foregoing evidence established the plaintiffs "discovered" their decedent's injury some time in 1972, over a year before the filing of the wrongful death action.

Plaintiffs do not dispute this factual determination. Instead they contend the trial court erred in ruling that in a wrongful death action the one-year period of section 340.5 begins to run on the discovery by plaintiffs of their decedent's injuries. It is plaintiffs' theory that the word "injury" in the statute should be read to relate the commencement of the one-year period to the discovery by plaintiffs of the specific "injury" on which their suit is based, namely the allegedly wrongful *death* of their decedent.

Under the interpretation given section 340.5 by both the trial court and the defendants, on the other hand, the word "injury" as used

throughout section 340.5 refers to the harm suffered by the direct victim of the malpractice, whether or not the limitation period is applied in a suit brought by that victim or by his heirs after his death. According to this view, the one-year period for any possible wrongful death action would begin with the discovery by the heirs that the patient had been injured by an act of malpractice.[6] If the victim died within a year after this event, his heirs would have the remainder of the year in which to file a wrongful death claim;[7] if the victim died more than a year after his heirs discovered that he had been negligently injured, section 340.5 would assume a substantive aspect and totally eliminate the rights which the heirs would otherwise have under Code of Civil Procedure section 377 to recover for his wrongful death.

Clearly the trial court's interpretation of the word "injury" in section 340.5 can produce a harsh result. It would bar many otherwise meritorious causes by the heirs of malpractice victims, simply because the victim remained alive for a year after the discovery of his maltreatment. And this result would follow, not from a lack of diligence by the heirs, but because the one-year limitation period operated to extinguish the cause of action before it ever accrued—i.e., before the heirs had any opportunity to file suit.[8] Furthermore, since the discovery of "injury" resulting from medical malpractice is often nearly contemporaneous with the act of malpractice itself, section 340.5 would, in those situations, relieve medical practitioners of all liability to the heirs of their patients, so long as the fatal miscarriage of duty produced death in no less than one year.[9]

We have found no persuasive evidence of a legislative purpose to so truncate the recovery rights of the heirs of malpractice victims.

[6]When the statute relates the one-year period to the date "plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury," the word "plaintiff" of necessity refers, in a wrongful death action, to the plaintiffs in *that* action—not to the decedent, who of course cannot be a plaintiff in a suit to recover for his own wrongful death.

[7]Under defendants' interpretation, then, the period during which the heirs of a malpractice victim could file suit might be as short as one day, or even a few hours or minutes.

[8]The question here is not whether statutes of limitation can extinguish potential causes of action before they accrue, but whether the Legislature intended this law to have such an effect. (Cf. Code Civ. Proc., § 312.)

[9]The consequences of defendants' reading of the word "injury" are somewhat less harsh in the context of the four-year limitation period of section 340.5. Defendants would construe that provision to extinguish all causes of action for wrongful death, before they ever accrue, when the decedent survives more than four years after his "injury" at the hands of a medical practitioner.

██ The documented history of section 340.5 offers little hint of the intended meaning of the word "injury" in the context of wrongful death actions.[10] Furthermore, the statutory and case law context in which section 340.5 was enacted supports plaintiffs' more restrained interpretation of the Legislature's intent.

Prior to 1970, when section 340.5 was enacted, the statute of limitations for personal injury and wrongful death litigation was provided by Code of Civil Procedure section 340, subdivision 3. That statute set the limitation period for both kinds of actions at one year, but failed to identify the event which triggered the running of the period. However, judicial decisions firmly established the principle that " 'In a suit for malpractice the statute of limitations commences to run when the plaintiff discovers the injury and its negligent cause or through the exercise of reasonable diligence should have discovered it.' " (Italics deleted.) (*Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 885 [112 Cal.Rptr. 540, 519 P.2d 588]; see also *Huysman* v. *Kirsch* (1936) 6 Cal.2d 302, 312 [57 P.2d 908]; Comment (1974) 2 Pacific L.J. 663, 665-666.)

This rule of "delayed accrual" applied to medical malpractice actions for wrongful death, as well as those for personal injuries. (*Wohlgemuth* v. *Meyer* (1956) 139 Cal.App.2d 326, 331 [293 P.2d 816].) In personal injury suits, of course, the statute was triggered by the plaintiff's discovery of the negligent cause of his own physical injury. (See *Huysman, supra*; 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 316, pp. 1158-1160.) However, in wrongful death actions the limitation period began to run only upon the death of the decedent and the discovery of that death's

---

[10]Defendants attempt to fill this lacuna by offering as evidence of legislative intent the affidavits of three members of the Legislature who were involved in the passage of section 340.5. The declarations of individual legislators as to the intent of the Legislature in enacting a statute are afforded little weight. (See *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 258 [104 Cal.Rptr. 761, 502 P.2d 1049].) Even if such affidavits were significant, those submitted by the defendants would be of no value in resolving the meaning of the word "injury." The statements of the legislators recite, in the identical words of two of them, that "it was the intent of the . . . Legislature in enacting [section 340.5] to thereby place an absolute limit of time for the commencement of all actions predecated [*sic*] upon an alleged act or acts of medical malpractice whether said actions were for personal injury, or injuries, or death." But plaintiffs do not deny that section 340.5 limits the time for filing wrongful death as well as personal injury actions; the question is when those limitations start to run. The legislative affidavits do not address that crucial issue, except in their implication that the limitation period commences with the "acts of medical malpractice"—an implication refuted by the statute itself, which clearly relates the limitation period to the "injury" rather than the act of malpractice.

negligent cause. (*Wohlgemuth, supra*; 2 Witkin, *op. cit. supra*, § 310, p. 1153.)

In both types of malpractice actions the "discovery doctrine," as judicially developed prior to 1970, could thus operate to postpone the commencement of the limitation period indefinitely, i.e., as long as the plaintiff had no knowledge—whether actual or presumptive—of the negligent cause either of his injury or of his decedent's death. Concern that this "open-ended" statute of limitations was contributing to the costs of medical malpractice insurance led to repeated legislative efforts to modify the statute. (See Comment (1974) 2 Pacific L.J. 663, 667-671.)

One of these proposals, Senate Bill No. 362 of the 1970 Regular Session, provided an absolute maximum four-year period from the date of injury in which to commence a malpractice action regardless of whether the plaintiff knew or should have known the cause of the injury. (*Id.* at p. 669.) This bill eventually became section 340.5, but not before the Legislature had added a tolling provision which substantially abrogated the absolute quality of the limitation period. (*Id.* at pp. 669-671.)

Defendants seem to argue from the premise that the undiluted purpose of section 340.5 was to lower malpractice insurance rates by enabling insurers to reduce the amount of reserves they need maintain to meet potential claims. They urge that because a statute of limitations in wrongful death actions which extinguishes a large number of claims before they accrue might substantially curtail malpractice exposure, the legislation should be construed in conformity with that end.

But section 340.5 evinces no such single-minded purpose. Instead, as originally worded, the statute appears to have been a compromise between concern over the extended exposure of medical practitioners to malpractice liability and a desire not to bar potentially worthy plaintiffs from court before they have a fair chance to bring suit. The Legislature declined to adopt other proposals before it which held out the promise of substantially greater reductions in malpractice exposure and necessary insurance reserves. Thus the Legislature did not date the limitation period from the "alleged wrongful act," as provided in one proposal. (Assem. Bill No. 135 (1969 Reg. Sess.).) Instead, the limitation period was tied to "injury," a word of art which might refer to an event occurring some time after the commission of a

"wrongful act."[11] The tolling provisions written into the 1970 law themselves indicate limits which the Legislature placed on malpractice insurance relief: under these provisions the statute could still be tolled indefinitely, provided that the plaintiff could establish a failure by the defendant "to disclose any act, error, or omission, upon which [the] action is based, which is known or through the use of reasonable diligence should have been known to [the defendant]."

In the absence of any explicit statutory provision or persuasive legislative history it would be groundless speculation to assume, as defendants invite us to do, that the sole purpose of section 340.5 was to reduce the potential malpractice liability of doctors, and hence that the section should be read to drastically alter the previous statute of limitations for wrongful death actions.

On the contrary, when the Legislature approved section 340.5 it acted against a backdrop of statutory and judge-made law which indicated that the relevant "injury" in wrongful death actions, for statute of limitations purposes, was the death of the plaintiff's decedent. As noted above, it was well established prior to 1970 that the statute of limitations for wrongful death actions began to run on the decedent's death (*Marks* v. *Reissinger* (1917) 35 Cal.App. 44, 50-53 [169 P. 243]) or, in medical malpractice cases, on the discovery of that death's negligent cause (*Wohlgemuth* v. *Meyer* (1956) *supra,* 139 Cal.App.2d 326).

■ This primary relevance of the decedent's death for statute of limitations purposes had correctly been seen, in *Marks* and *Wohlgemuth,* to follow logically from the underlying concept that the cause of action for wrongful death, created by the Legislature, is not merely a continuation or survival of the decedent's claim for personal injuries, but is an entirely new cause of action created in the heirs and based on the

---

[11]Thus the word "injury," as used in section 340.5 to denote the start of the four-year limitation period, seems clearly to refer to the damaging effect of the alleged wrongful act and not to the act itself. As we noted in *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433], "The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence." *Budd* was an attorney malpractice case, but its rationale seems equally applicable to medical malpractice. Until the patient "suffers appreciable harm" as a consequence of the alleged act of malpractice, he cannot establish a cause of action. " 'It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred.' " (*Id.* at p. 201, quoting from Prosser, Law of Torts (4th ed. 1971) § 30, p. 144; see also *Huysman* v. *Kirsch* (1936) *supra,* 6 Cal.2d 302, 309; *Davies* v. *Krasna* (1975) 14 Cal.3d 502, 513 [121 Cal.Rptr. 705, 535 P.2d 1161].)

death of the decedent as that death inflicted injury upon them. (*Earley* v. *Pacific Electric Ry. Co.* (1917) 176 Cal. 79 [167 P. 513].)[12] Until that death, the heirs have suffered no "injury" under section 377 and hence have no basis for filing suit. To the extent that statutes of limitation seek to encourage the prompt presentation of claims, this purpose is best served by a limitation period commencing on the date the cause of action first accrues—in this case when the death of the decedent creates a potential right of recovery in the heirs under section 377.[13]

This background of well-established principles regarding the statute of limitations and the concept of "injury" in wrongful death actions suggests that section 340.5 has a more limited purpose than urged by defendants. The objective is to circumscribe the "discovery" doctrine as it had previously been applied in wrongful death litigation, in the same way that section 340.5 modified the doctrine in personal injury cases. As a majority of this court recently held with respect to the one-year limitation period in medical malpractice actions, "We think that the Legislature in enacting section 340.5 intended no more than to adopt the prior 'discovery' rule, . . ." (*Sanchez* v. *South Hoover Hospital* (1976) *supra, ante,* pp. 93, 99.) In wrongful death actions, as we have seen, the prior discovery rule gave plaintiffs one year to file suit measured from the date on which they discovered or should have discovered their "injury" in the form of the death of their decedent and

[12]In keeping with this accepted theory of wrongful death actions, at least one court has interpreted the word "injury," as used generally in a statute, to refer to a decedent's death when the statute was viewed in a wrongful death context. In *Garcia* v. *State of California* (1967) 247 Cal.App.2d 814 [56 Cal.Rptr. 80], the word "injury" in a statute regulating government liability in certain prison situations (Gov. Code, § 844.6) was held to refer to the death of a decedent prisoner and to allow recovery for wrongful death by the heirs of that prisoner, even though the decedent himself could not have recovered for his personal injuries while alive.

[13]Here the use of the term "plaintiff" in the description of the one-year limitation period in section 340.5 creates an incongruity in defendants' proposed interpretation. As noted above (see fn. 6, *ante*), in a wrongful death context the term "plaintiff" must refer to the heirs of the decedent. Thus, under defendant's theory the shorter one-year limitation period would be triggered in wrongful death actions by the discovery by an injured patient's potential heirs of the negligent cause of the patient's injury. This event may or may not coincide with a similar discovery by the patient himself, and it does not empower the potential heirs to file a wrongful death action while their "decedent" lives. Nor is this discovery by the potential heirs an event upon which medical practitioners might reliably calculate their malpractice exposure, since, unless they disclose their negligence to all potential heirs, defendants may never learn of the heirs' discovery—whether that discovery is "presumptive" or actual. Thus as a starting point for the one-year limitation period, the discovery by the potential heirs of the injury to their "decedent" appears largely unrelated to any purpose of section 340.5 suggested by either plaintiffs or defendants herein.

its negligent cause. ■ However, as with other medical malpractice actions, the Legislature sought to limit the length of time for which the discovery rule could perpetuate the possibility of suit by providing an alternative, overall four-year limitation period beginning with the date of that "injury."[14]

Defendants insist this interpretation of the statute is at odds with its language. They point out that at the outset of section 340.5 the Legislature refers to actions for "injury or death." According to defendants, the statute thereby makes a rigid distinction between the injury to and the death of a medical patient. Apparently invoking the maxim *inclusio unius est exclusio alterius,* defendants conclude that the statute's later use of the single word "injury" in describing the limitation periods impliedly excludes a reference to the patient's death.

The maxim, however, must give way before the evidence of a contrary legislative intent identified hereinabove. (*Fields* v. *Eu* (1976) *ante,* pp. 322, 332 [134 Cal.Rptr. 367, 556 P.2d 729].) In addition, defendants' argument assumes that by use of the word "or" the Legislature intended to connote mutual exclusion. This premise is contradicted by the language which immediately followed the reference to "injury or death" in the statute as originally enacted. The Legislature there set forth a long list of partially overlapping classes of medical practitioners and tortious acts to which the statute applied.[15] Although couched in the alternative, the categories mentioned were not mutually exclusive. For example, the statute listed "physician or surgeon," yet the Legislature manifestly did not mean that some physicians are not also surgeons, or that all surgeons are not also physicians. Similarly, it would be difficult to distinguish between "such person's alleged professional negligence," and an "error or omission in such person's practice," even though they were joined in section 340.5 by the word "or." ■ It is consistent with this style of drafting to conclude that the Legislature used the phrase "injury or death" without

[14]It is to be presumed, of course, that the Legislature intended the word "injury" to have the same meaning in the parallel four-year and one-year limitation periods of the statute. Moreover, "injury" as used in the four-year provision is to be construed in light of the same precedents which give meaning to the word as it appears in the one-year provision.

[15]". . . an action for injury or death against a physician or surgeon, dentist, registered nurse, dispensing optician, optometrist, registered physical therapist, podiatrist, licensed psychologist, osteopath, chiropractor, clinical laboratory bioanalyst, clinical laboratory technologist, veterinarian, or a licensed hospital as the employer of any such person, based upon such person's alleged professional negligence, or for rendering professional services without consent, or for error or omission in such person's practice, . . .' "

intending to deny that a "death" could also constitute an "injury" to the heirs.

We conclude that the word "injury" in section 340.5, as that statute applies to wrongful death actions, must be read to refer to the wrongfully caused death of the plaintiff's decedent. In view of this interpretation, it appears that plaintiffs' suit, filed within three months of the death of their decedent Virginia Larcher, was properly brought within the one-year period of limitation of section 340.5.[16]

The judgment appealed from is reversed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

---

[16]We thus have no occasion to consider plaintiffs' claim that a contrary reading of the statute would violate constitutional guarantees of equal protection. Nor is it necessary to decide whether Code of Civil Procedure section 352 would have operated to toll the limitation period of section 340.5 as regards the claims of the minor children of Virginia Larcher who are plaintiffs here. Finally, we do not consider the contention of plaintiff that the defendant medical clinic is not covered by section 340.5 as originally worded.

Defendants further contend that the voluntary dismissal with prejudice of plaintiff Basil Larcher's earlier product liability action operates to bar his present suit for wrongful death. However, this defense was not presented to the trial court, and the circumstances of the dismissal are not apparent from the record before us. Defendants' claim clearly " 'contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial.' " (*Ward* v. *Taggert* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) We therefore express no view on the point.