[Civ. No. 52298. Second Dist., Div. Five. Nov. 22, 1978.]

DONNA SUE TRESEMER, Plaintiff and Appellant, v.
MORTON BARKE, Defendant and Respondent.

COUNSEL

Kanarek & Berlin and Sheldon Berlin for Plaintiff and Appellant.

Bonne, Jones, Bridges, Mueller & O'Keefe and Joel Bruce Douglas for Defendant and Respondent.

OPINION

**STEPHENS, Acting P. J.**—This is an appeal by plaintiff Donna Sue Tresemer from the grant of summary judgment in favor of defendant Morton Barke, M.D. The action, filed on April 12, 1976, is for damages allegedly sustained by plaintiff from a Dalkon Shield intrauterine device. Plaintiff's third amended complaint charges Dr. Barke, who inserted the device in August 1972, with willful misconduct (count one) and medical malpractice (count two). Mario De Lara, M.D., who attempted to remove the device on April 17, 1975,[1] is charged with willful misconduct (count three) and medical negligence (count four), and A. H. Robbins Company is charged with the manufacture and distribution of harmful contraceptive intrauterine devices (count five).

After demurrers had been sustained to three separate complaints, Dr. Barke (hereinafter defendant) responded to the third amended complaint by a demurrer and motion to strike along with a motion for summary judgment. Plaintiff filed no written opposition to the motions. The motion to strike and demurrer were placed off calendar and the motion for summary judgment was granted, predicated on the grounds that the statute of limitations (Code Civ. Proc., §§ 340.5 and 340, subd. 3) barred the action, the action was without merit, and plaintiff had presented no triable issue of fact. We conclude defendant's moving papers do not show that plaintiff's action is barred by time limitations and do not rebut all elements of defendant's liability.

 Inasmuch as this case reaches us on appeal from a summary judgment in favor of defendant, we need only determine whether there is a reasonable *possibility* that plaintiff may be able to establish its case. When the moving party is the defendant, he must conclusively negate a necessary element of plaintiff's case or establish a complete defense, and

---

[1]Dr. De Lara provided this date in his affidavit in support of his separate motion for summary judgment which appears as part of our record on appeal.

thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338-339 [138 Cal.Rptr. 670].) Code of Civil Procedure section 437c provides in pertinent part: "Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense thereto. . . . [¶] The motion shall be supported or opposed by affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken. [¶] Such motion shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact. [¶] Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. [¶] If a party is otherwise entitled to a summary judgment pursuant to the provisions of this section, summary judgment shall not be denied on grounds of credibility or for want of cross-examination of witnesses furnishing affidavits or declarations in support of the summary judgment, except that summary judgment may be denied in the discretion of the court, where the only proof of a material fact offered in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to such fact; or where a material fact is an individual's state of mind, or lack thereof, and such fact is sought to be established solely by the individual's affirmation thereof."

"The summary judgment procedure is drastic and should be used with caution so that it does not become a substitute for an open trial. . . . 'Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor . . . and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion.' [Citations.] ■ A defendant who moves for summary judgment must prevail on the basis of his own affidavits and admissions made by the plaintiff, and unless the defendant's showing is sufficient, there is no burden on the plaintiff to file

affidavits showing he has a cause of action or to file counteraffidavits at all. A summary judgment for defendant has been held improper where his affidavits were conclusionary and did not show that he was entitled to judgment and where the plaintiff did not file any counteraffidavits. [Citations.]" (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 111 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

█ In the instant case, plaintiff filed no opposition to defendant's motion for summary judgment, and made no formal request that the trial court take judicial notice of any document, declaration or affidavit. However, defendant's moving papers are insufficient to establish his defense that plaintiff's causes of action against him were barred by the applicable statutes of limitations. (Cf. *Butcher* v. *Okmar Oil Co.* (1977) 65 Cal.App.3d 972, 975-976 [135 Cal.Rptr. 713].)

█ Although generally a personal injury claim accrues and the period of limitations commences when the wrongful act takes place, an exception is presented when the pathological effect occurs without perceptible trauma and the victim is "blamelessly ignorant" of the cause of injury. In such case the statute of limitations does not begin to run until the person knows or, by the exercise of reasonable diligence, should have discovered the cause of injury. (*G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 25 [122 Cal.Rptr. 218].) █ Personal injury actions based upon allegations of willful misconduct are governed by the one-year period of limitations prescribed by Code of Civil Procedure section 340, subdivision 3.

Medical negligence claims are governed by Code of Civil Procedure section 340.5. Before the advent of section 340.5 in 1970, such malpractice actions were also governed by Code of Civil Procedure section 340, subdivision 3, *supra,* and judicial decisions had firmly established the principle that the one-year limitations period commences to run when the plaintiff discovers the injury and its negligent cause, or through the exercise of reasonable diligence should have discovered it. (*Larcher* v. *Wanless* (1976) 18 Cal.3d 646, 654 [135 Cal.Rptr. 75, 557 P.2d 507].) The 1970 version of section 340.5 preserved the one-year "discovery" rule, but circumscribed it with an outer limit of four years. (*Id.,* at p. 658.)

In 1975 section 340.5[2] was amended. The amended section was in effect

---

[2]Code of Civil Procedure section 340.5 provides as follows: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of

when the present suit was filed and is controlling as to the causes of action alleging medical negligence. The Legislature retained the one-year "discovery" limitations period in the 1975 version of section 340.5, reduced the four-year maximum limitation to three years and provided that " '[i]n no event shall the time for commencement of legal action *exceed three years . . . .* ' " unless affected by one of its three specific tolling provisions. (Italics in original. *Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 100 [132 Cal.Rptr. 657, 553 P.2d 1129].) The "time for the commencement of action" applicable to the three-year limitation period is triggered by the plaintiff's "injury." (Code Civ. Proc., § 340.5.)

Lest it appear that it is the same event which causes both the one-year and three-year limitation periods to begin, we reiterate that the one-year period commences not merely upon discovery of the harm caused by the alleged wrongful act, but requires also "discovery of the malpractice." (*Martinez* v. *County of Los Angeles* (1978) 78 Cal.App.3d 242, 245 [144 Cal.Rptr. 123].)

Inasmuch as one of the grounds upon which the summary judgment herein was granted was that the action was "barred by the Statute of Limitations as set forth in Sections 340(3) and 340.5 of the Code of Civil Procedure . . . ," the court apparently mistakenly reasoned that the

injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. [¶] Actions by a minor shall be commenced within three years from the date of the alleged wrongful act except that actions by a minor under the full age of six years shall be commenced within three years or prior to his eighth birthday whichever provides a longer period. Such time limitation shall be tolled for minors for any period during which parent or guardian and defendant's insurer or health care provider have committed fraud or collusion in the failure to bring an action on behalf of the injured minor for professional negligence. [¶] For the purposes of this section: [¶] (1) 'Health care provider' means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code, and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. 'Health care provider' includes the legal representatives of a health care provider; [¶] (2) 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (Added by Stats. 1970, ch. 360, § 1, p. 772, Amended by Stats. 1975, Second Ex. Sess., ch. 1, § 25, p. 3969; Stats. 1975, Second Ex. Sess., ch. 2, § 1.192, p. 3991, urgency, eff. Sept. 26, 1975, operative Dec. 12, 1975.)

relevant date which set the limitations periods in motion is August 1972, the date when defendant inserted the Dalkon shield. However, in *Larcher* the Supreme Court differentiated between the "injury" and the "alleged wrongful act." It stated that the word "injury," as used in the *1970* version of section 340.5 to denote the start of the four-year limitation period, was a "word of art" which clearly referred to the "damaging effect" of the "alleged wrongful act" and not to the act itself. (*Id.*, at pp. 655-656, and fn. 11 on p. 656.) Likewise, in the 1975 amended version of section 340.5, it is the "injury" which sets in motion the three-year limitation period. "For our purposes here, the key holding of both *Sanchez* and *Larcher* is that 'injury' is not synonymous with 'wrongful act.' " (*Bispo* v. *Burton* (1978) 82 Cal.App.3d 824, 830 [147 Cal.Rptr. 442].)

At bench, plaintiff's third amended complaint alleges that not until May 5, 1975, the date on which she consulted Dr. Michael Fahey, did she discover the cause of her injury. She further alleges facts to show that her failure to make an earlier discovery was reasonable and not through lack of due diligence in investigating or taking action. Such allegations are sufficient to satisfy the pleading requirements and raise the issue of belated discovery. (*Sanchez, supra,* pp. 106-107; *Dujardin* v. *Ventura County Gen. Hosp.* (1977) 69 Cal.App.3d 350, 356 [138 Cal.Rptr. 20]; *G. D. Searle & Co.* v. *Superior Court, supra,* 49 Cal.App.3d 22, 26.) Whether there has been such delayed discovery of the cause of action is a question of fact. It is only where reasonable minds can draw only one conclusion from the evidence that the question becomes a matter of law. (*Wozniak* v. *Peninsula Hospital* (1969) 1 Cal.App.3d 716, 725 [82 Cal.Rptr. 84].) Nothing in defendant's moving papers contradicts plaintiff's allegation that she first discovered the cause of her injuries on May 5, 1975, and could not have with due diligence made such discovery before. Plaintiff's action having been filed on April 12, 1976, defendant's motion for summary judgment should not have been granted on the premise that the one-year from "discovery" provisions of sections 340.5 and 340, subdivision 3, of the Code of Civil Procedure bar the claims.

■ Moreover, plaintiff's action is likewise not barred by those sections merely because defendant's affidavit and documentation in support of his motion for summary judgment show that he had seen plaintiff on only the one occasion in 1972 when he had inserted the Dalkon Shield. Although plaintiff's failure to file counteraffidavits admits the truth of defendant's declaration (*Sanchez* v. *South Hoover Hospital, supra,* at p. 107; *Brewer* v. *Reliable Automotive Co.* (1966) 240 Cal.App.2d 173, 175 [49 Cal.Rptr. 498]), that fact, standing alone, proves

neither the date of "injury," which sets in motion the three-year limitation period of Code of Civil Procedure section 340.5, nor the date the injury and its cause was discovered, which sets in motion the one-year limitation periods of both sections 340.5 and 340, subdivision 3. Therefore there remain triable issues of fact regarding defendant's limitations defenses. If defendant proved that one year prior to filing her action plaintiff discovered or with due care or diligence should have discovered her injury and its cause her action will be barred. (*Sanchez, supra,* at p. 96, and see *Stafford* v. *Shultz* (1954) 42 Cal.2d 767, 778 [270 P.2d 1].) Moreover, even fraudulent or intentional concealment by defendant of facts upon which the causes of action are based will not toll the applicable statutes if such actual or constructive discovery has occurred, for at that time the one-year periods commence to run. (*Id.*)[3] " 'It is not the policy of the law to unjustly deprive one of his remedy. On the other hand, if the proof shows knowledge or cause for knowledge, there is no policy which requires the protection of plaintiffs.' [Citation] . . . " (*Warrington* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 564, 573 [80 Cal.Rptr. 130].)

■ A defendant moving for summary judgment who cannot establish a complete defense has the burden of establishing that the plaintiff's causes of action against him have no merit. He must make a factual showing negating the existence of all such causes of action on all theories embodied in the complaint. If he fails in that burden, summary judgment must be denied despite the lack of opposing declarations. (*Kelleher* v. *Empresa Hondurena de Vapores, S.A.* (1976) 57 Cal.App.3d 52, 58 [129 Cal.Rptr. 32].)

"Applicable substantive law determines the facts necessary to support a particular theory of relief and hence the sufficiency of properly framed

[3]The tolling provisions apply only to the three-year limitation period of Code of Civil Procedure section 340.5. (*Sanchez, supra,* at pp. 99-100; *Gray* v. *Reeves* (1977) 76 Cal.App.3d 567, 577-578 [142 Cal.Rptr. 716].) The bill creating the 1970 version of section 340.5 of the Code of Civil Procedure, as originally proposed, did not provide for tolling. The bill was amended to add a tolling provision when there was intentional concealment of "any act, error or omission upon which such action is based," and in its last amended 1970 version provided that the time limitation would be tolled upon failure "to disclose any act, error, or omission upon which such action is based which is known or through the use of reasonable diligence should have been known to him." (See *Sanchez, supra,* at p. 105 (conc. opin).) The 1975 version of Code of Civil Procedure, section 340.5, appears to require greater culpability on the part of the defendant than did the 1970 version in order to toll the statute: "proof of fraud, intentional concealment, or . . . the presence of a non-therapeutic foreign body in the claimant." (7 Pacific L.J. 546.) See *Stafford* v. *Shultz, supra,* 42 Cal.2d 767, 777, re duty of physician to disclose "all facts which materially affected [patient's] rights and interests." Failure to do so when doctor had knowledge of the facts was held to be *fraud.*

factual statements in declarations to support a summary judgment." (*Ibid.*)

The foundation of all liability for a person's willful and negligent acts is Civil Code section 1714 which declares: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. . . ."

Plaintiff alleges that: (1) defendant prescribed and inserted a Dalkon Shield for temporary contraceptive purposes without proper investigation to determine its safety and (2) defendant failed to warn her that such Dalkon Shield was a health hazard when he subsequently acquired actual knowledge of the danger. Charging willful misconduct in count one, plaintiff prayed for compensatory damages and exemplary damages on the ground that defendant was "guilty of oppression, fraud and malice . . ."; charging negligent malpractice in count two, plaintiff prayed for compensatory damages only.

█ Defendant's moving papers were sufficient to negate any charge that his conduct was either willfully or negligently wrongful when in 1972 he inserted the intrauterine device. He declared in his affidavit that "In August, 1972, the Dalkon Shield was one of the most popular and acceptable intrauterine devices on the market. At the time it was lauded and believed to be one of the more safer [*sic*] and effective intrauterine devices available. It was not until approximately two years later that serious question as to its general safety was first raised and acknowledged in the general medical community; shortly thereafter it was withdrawn from the market."

Defendant's attorney in his affidavit stated that he had been involved in numerous cases involving the Dalkon Shield and asserted, "I can certify to the court that it was not until some time in the middle of 1974 that the Dalkon Shield fell into question and shortly thereafter withdrawn from the market." Defendant in his affidavit further declared that the device had been inserted "without incident," and that he thereafter provided plaintiff with a copy of the manufacturer's "package insert" which described the Dalkon Shield and potential problems and complications. His affidavit also set forth his credentials in obstetrics and gynecology and declared that his conduct was within the standard of practice in the community.

█

"[I]t is settled that an opponent's failure to file counteraffidavits admits the truth of the movant's affidavit. [Citation.]" (*Sanchez* v. *South Hoover Hospital, supra,* 18 Cal.3d 93, 107.) Although under well established rules governing summary judgment motions, the affidavits of the moving party are to be strictly construed, and those of the opponent liberally construed, nevertheless, the party opposing a motion for summary judgment which is supported by affidavits or declarations sufficient to sustain the motion (or partial grant of the motion) has the burden of showing that triable issues of fact exist. "The purpose of the summary procedure is to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues." (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) "The opponent of a motion for summary judgment cannot rely on his pleadings, but must make an independent showing that he has 'sufficient proof of the matters alleged to raise an issuable question of fact in regard thereto.'" (*Cullincini* v. *Deming* (1975) 53 Cal.App.3d 908, 913-914 [126 Cal.Rptr. 427].) In the absence of opposing affidavits, the grant of summary judgment was proper on the issue of defendant's allegedly wrongful conduct in 1972 when he inserted the Dalkon Shield.

■ Moreover, defendant's declaration in his affidavit that "I had no reason to and in fact did not bear any malice, reckless disregard or desire to harm Ms. Tresemer," was sufficient to negate any charge of malice, in the absence of counteraffidavits. The substantive law applicable to a claim for exemplary damages is contained in Civil Code section 3294 which provides that "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." "The cases interpreting section 3294 make it clear that in order to warrant the allowance of punitive damages the act complained of must not only be wilful in the sense of intentional, but it must also be accompanied by aggravating circumstances, amounting to malice. The malice required implies an act conceived in a spirit of mischief or with criminal indifference towards the obligations owed to others. There must be an intent to vex, annoy or injure. Mere spite or ill will is not sufficient; and mere negligence, even gross negligence is not sufficient to justify an award of punitive damages. [Citations.]" (Italics omitted; *Ebaugh* v. *Rabkin* (1972) 22 Cal.App.3d 891, 894 [99 Cal.Rptr. 706].) The only form of malice contemplated by section 3294, which creates the right to exemplary damages, *is malice in fact.* Malice in fact denotes ill will, or desire to do harm for the mere satisfaction of doing it.

(*Id.,* at pp. 894-895.) "The central spirit of the exemplary damage statute, the demand for evil motive, is violated by an award founded upon recklessness alone." (*G. D. Searle & Co.* v. *Superior Court, supra,* 49 Cal.App.3d 22, 32.)[4]

We turn now to plaintiff's theory of recovery, based on the proposition that defendant had a duty to warn her of the dangerous effects of the Dalkon Shield when, subsequent to its insertion, he obtained actual knowledge of its hazards, and that his failure to do so amounted to negligence or willful, wanton and reckless disregard for the consequences. We note primarily that if there is such duty to warn, defendant's conclusory declaration in his affidavit that "at all times pertinent my conduct was within the standard of practice in this community," unsupported by further factual averments, is not sufficient to negate the allegation that such duty was breached. (*Colby* v. *Schwartz* (1978) 78 Cal.App.3d 885, 889 [144 Cal.Rptr. 624]; *Fuller* v. *Goodyear Tire & Rubber Co.* (1970) 7 Cal.App.3d 690, 693 [86 Cal.Rptr. 705]; *Kramer* v. *Barnes* (1963) 212 Cal.App.2d 440, 446 [27 Cal.Rptr. 895].)

If there was here no duty to warn plaintiff, then defendant was "free to act [or fail to act] in careless disregard of [her] life and safety." (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) "In analyzing this issue, we bear in mind that legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." (*Id.*) ■ Whether defendant owes a requisite "duty of care," in a given factual situation, presents a question of law which is to be determined by the courts alone. (*Peter W.*

---

[4]"California has recognized various degrees of negligence which invoke various legal consequences but as was stated in *Donnelly* v. *Southern Pacific Co.,* 18 Cal.2d 863, at page 869 . . . 'A negligent person has no desire to cause the harm that results from his carelessness, . . . and he must be distinguished from a person guilty of willful misconduct, such as assault and battery, who intends to cause harm. [Citation.] Willfulness and negligence are contradictory terms. [Citations.] If conduct is negligent, it is not willful; if it is willful, it is not negligent.' [¶] . . . 'If conduct is sufficiently lacking in consideration for the rights of others, reckless, heedless to an extreme, and indifferent to the consequences it may impose, then, regardless of the actual state of mind of the actor and his actual concern for the rights of others, we call it wilful misconduct, and apply to it the consequences and legal rules which we use in the field of intended torts.' [¶] This rule is not simply a device by which the artful pleader may circumvent the well-established defense of contributory negligence. No amount of descriptive adjectives or epithets may turn a negligence action into an action for intentional or wilful misconduct." (*Mahoney* v. *Corralejo* (1974) 36 Cal.App.3d 966, 972-973 [112 Cal.Rptr. 61].) As the court stated, "[p]laintiff had but one cause of action even though by his duplicative complaint he attempted to carve out two." (*Id.,* at p. 972.)

*v. San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 822 [131 Cal.Rptr. 854]; *Raymond v. Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 493, p. 2756.) " 'Occasions for judicial determination of a duty of care are infrequent, because in "run of the mill" accident cases the existence of a duty may be—and usually is—safely assumed. Here the problem is squarely presented.' [Citation.]" (*Peter W. v. San Francisco Unified Sch. Dist., supra,* at p. 822.)

". . . As stated in *Dillon v. Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]: 'The assertion that liability must . . . be denied because defendant bears no "duty" to plaintiff "begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. . . . [Duty] is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." (Prosser, Law of Torts [3d ed. 1964] at pp. 332-333.)' [¶] In the landmark case of *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], Justice Peters recognized that liability should be imposed 'for injury occasioned to another by his want of ordinary care or skill' as expressed in section 1714 of the Civil Code. Thus, Justice Peters, quoting from *Heaven v. Pender* (1883) 11 Q.B.D. 503, 509 stated: ' "whenever one person is by circumstances placed in such a position with regard to another . . . that if he did not use ordinary care and skill in his own conduct . . . he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger." ' [¶] We depart from 'this fundamental principle' only upon the 'balancing of a number of considerations'; major ones 'are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.' [¶] The most important of these considerations in establishing duty is *foreseeability.* As a general principle, a 'defendant owes a duty of care to all persons who are *foreseeably* endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.' (*Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 399 [115 Cal.Rptr. 765, 525 P.2d 669]; *Dillon v. Legg, supra,* 68 Cal.2d 728, 739; *Weirum v. RKO General, Inc.* (1975) 15

Cal.3d 40 [123 Cal.Rptr. 468, 539 P.2d 36]; see Civ. Code, § 1714.)"
(Italics added; fns. omitted; *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, 434-435.)

A court's conclusion that defendant owes plaintiff a duty of care is "[only an] 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts (4th ed. 1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser, *Palsgraf Revisited* (1953) 52 Mich.L.Rev. 1, 15.) ▮ While the question whether one owes a duty to another must be decided on a case-by-case basis, every case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct. (*Hilyar* v. *Union Ice Co.* (1955) 45 Cal.2d 30, 36 [286 P.2d 21].) However, *foreseeability of the risk is a primary consideration in establishing the element of duty. (Dillon* v. *Legg, supra,* 68 Cal.2d 728, 739.) . . . [¶] *While duty is a question of law, foreseeability is a question of fact for the jury. (Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272, 277 [40 Cal.Rptr. 812].)" (Italics added; fn. omitted; *Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d 40, 46.)

▮ It has been held in numerous cases that the duty of adequate warning by the manufacturer of an ethical drug (available only upon prescription) is discharged by its warning of hazards to doctors. *(Fogo* v. *Cutter Laboratories Inc.* (1977) 68 Cal.App.3d 744, 754 [137 Cal.Rptr. 417].) Absent special circumstances known or foreseeable in the exercise of due care by the manufacturer, there is no duty to warn the patient, one reason being that " ' "[i]t would be virtually impossible for a manufacturer to comply with the duty of direct warning, as there is no sure way to reach the patient." [Citation.]' " *(Id.,* at p. 755.) Who then is to tell the patient of hazards newly discovered and not known at the time of the original patient-physician contact when the drug or medical appliance was prescribed?

Prosser noted that "[i]n the determination of the existence of a duty, there runs through much of the law a distinction between action and inaction. In the early common law one who injured another by a positive, affirmative act, was held liable without any great regard even for his fault. But the courts were far too much occupied with the more flagrant forms

of misbehavior to be greatly concerned with one who merely did nothing, even though another might suffer harm because of his omission to act. . . . [¶] Liability for nonfeasance was therefore slow to receive recognition in the law." (Law of Torts, § 56, pp. 338-339.)

In discussing the duty to aid a person in peril, Prosser further noted at page 342 that "[w]here the original danger is created by *innocent conduct,* involving no fault on the part of the defendant, it was formerly the rule that no [duty to make a reasonable effort to give assistance and avoid any further harm] arose; but this appears to have given way, in recent decisions, to a recognition of the duty to take action, both where the prior innocent conduct has created an unreasonable risk of harm to the plaintiff, and where it has already injured him. . . . This process of extension has been slow, and marked with extreme caution; but there is reason to think that it may continue until it approaches a general holding that the mere knowledge of serious peril, threatening death or great bodily harm to another, which an identified defendant might avoid with little inconvenience, creates a sufficient relation, recognized by every moral and social standard, to impose a duty of action. [¶] Where the duty is recognized, it is agreed that it calls for nothing more than reasonable care under the circumstances." (Italics added.)

■ A cause of action is stated for failure to warn plaintiff. This would arise by virtue of a confidential relationship between doctor and patient. It is not a malpractice cause of action in the commonly understood sense but rather a malpractice action from the imposed continuing status of physician-patient where the danger arose from that relationship. It is also a cause of action for common negligence. The statute of limitations of section 340.5 would not apply even though the basic "injury" resulted from a medical treatment for it is a separate duty to act which is involved. Certainly the use of summary judgment is inappropriate under such circumstance. It is our conclusion that not only has a cause of action been stated, but that triable issues of fact remain, despite defendant's declarations.

The judgment is reversed.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied December 12, 1978, and respondent's petition for a hearing by the Supreme Court was denied January 17, 1979. Clark, J., was of the opinion that the petition should be granted.