[Civ. No. 52637. Second Dist., Div. Five. Mar. 30, 1979.]

ROBERT OSBORNE, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Sol Andrews for Plaintiff and Appellant.

Patterson, Ritner & Lockwood and Jeralyn Keller for Defendant and Respondent.

## OPINION

**ASHBY, J.**—Plaintiff Robert Osborne appeals from an order denying his petition under Government Code section 946.6 for relief from failure to file a timely claim against the county for medical malpractice.

Plaintiff was a patient at Rancho Los Amigos Hospital, owned by defendant County of Los Angeles, between December of 1967 and April of 1972. He entered that hospital for treatment for infection and osteomyelitis which had developed after surgery at another hospital to repair fractures of the left leg and hip which plaintiff suffered in a 1967 automobile accident. Various screws and pins had been inserted in the prior surgery and plaintiff was suffering infection in the left hip. In January 1968 surgery was performed on plaintiff at defendant hospital for

removal of these pins and screws. However, one screw was left in plaintiff's hip. Plaintiff alleges that there was negligence in failing to remove this screw, which prevented the healing of his infection and caused the infection to worsen. Plaintiff remained as a patient, both inpatient and outpatient, at defendant hospital until April 1972, where he continued to suffer infection and be confined to a wheelchair. Hospital records showed that the staff of defendant hospital was aware that one screw remained in plaintiff's hip, and one staff doctor opined that it would have to be removed if plaintiff's osteomyelitis was to be eradicated. Nevertheless, the screw was not removed.

In April 1972 plaintiff left the care of defendant hospital and became a patient at Orange County Medical Center, where he remained as an inpatient or outpatient through the filing of the instant action, and where he continued to suffer infection of the hip. X-rays taken at Orange County revealed the presence of the screw on May 5, 1972, September 12, 1973, January 4, 1976, and March 5, 1976. Because a hip "sinogram" indicated that the screw, and possibly also a sponge, were in the hip, surgery was performed on plaintiff at Orange County Medical Center on August 6, 1976, "for exploration, debridement and removal of foreign body." The old surgical screw was removed, and no sponge was found.

On August 11, 1976, plaintiff filed with the county board of supervisors his application for leave to present a late claim. In that application, plaintiff declared that "On or about the end of July, 1976, I was informed for the first time, that a major source of my physical and medical problems was the presence of a foreign substance left in my leg during one or more of the surgeries previously done, and the nature of the foreign substance in my body was not determined until August [6], 1976, when further surgery was done to remove the same." The board of supervisors denied his application, and plaintiff filed the instant petition. In his declaration herein plaintiff stated that at the time of the January 1968 surgery for removal of the metallic devices and screws from the infected left leg and hip, "I was unaware of the specific items that were to be removed or how much of it was to be removed." Plaintiff repeated his declaration that he was "informed for the first time" at the end of July 1976 "that a major source of my physical and medical problems was the presence of a foreign substance left in my leg during one or more of the surgeries previously done, . . ." Plaintiff stated, "I was completely unaware that the piece of metal (screw) was left in my hip until August of 1976, when it was removed at the U C I Medical Center in Orange County."

The trial court found that plaintiff's "cause of action, if any, arose between December of 1967 and May of 1968" and that plaintiff "either knew or reasonably should have known of the existence of his cause of action prior to August 11, 1975."[1] ■ We hold that the trial court erred in determining the date the cause of action accrued and we hold that the finding plaintiff knew or should have known of his cause of action prior to August 11, 1975, is not supported by the evidence.

First, the alleged negligence consisted of failing to remove the screw while plaintiff was under defendant's care, and thus the injury was a continuing one, up to April 1972, when plaintiff left defendant's care. (See *Huysman* v. *Kirsch,* 6 Cal.2d 302, 312 [57 P.2d 908]; *Sanchez* v. *South Hoover Hospital,* 18 Cal.3d 93, 97 [132 Cal.Rptr. 657, 553 P.2d 1129].)

The trial court obviously did not believe plaintiff's declaration that he did not know until August 1976 that a screw remained in his hip. ■ But under the "discovery rule," the statute of limitations commences in a medical malpractice case only when the plaintiff discovers the injury *and its negligent cause* or through the exercise of reasonable diligence should have discovered them. (*Whitfield* v. *Roth,* 10 Cal.3d 874, 885 [112 Cal.Rptr. 540, 519 P.2d 588]; *Wozniak* v. *Peninsula Hospital,* 1 Cal.App.3d 716, 722 [82 Cal.Rptr. 84].) ■ The question therefore is when did plaintiff discover or in the exercise of reasonable diligence should have discovered, that the screw was *improperly* left in his hip in January 1968. When originally inserted, the screw was presumably a therapeutic prosthetic device. Unlike a sponge, the screw might have been left in intentionally in 1968 and for sound medical reasons. Plaintiff declared that he was unaware which items were supposed to be removed and which were to remain. He exercised such diligence as may reasonably be expected of him. He was under the care of new physicians at Orange County Hospital and although they were aware of the screw from X-rays taken in 1972 and 1973, they did not recommend surgery or exploration and removal until 1976. The record shows no awareness or reasonable suspicion on plaintiff's part that the screw was *improperly* left in his hip. (See *Whitfield* v. *Roth, supra,* 10 Cal.3d at pp. 887-888.)

■ Code of Civil Procedure section 340.5 now specifies an outside limit in which a malpractice action must be commenced, regardless of the patient's belated discovery of the cause of action. (*Blake* v. *Wernette,* 57

---

[1] I.e., more than one year prior to the filing of the application for leave to present late claim on August 11, 1976. (Gov. Code, §§ 911.4, subd. (b), 946.6, subd. (c); *Viles* v. *State of California,* 66 Cal.2d 24, 31 [56 Cal.Rptr. 666, 423 P.2d 818].)

Cal.App.3d 656, 659-660 [129 Cal.Rptr. 426]; *Sanchez* v. *South Hoover Hospital, supra,* 18 Cal.3d 93, 98-99; *Larcher* v. *Wanless,* 18 Cal.3d 646, 650 fn. 1 [135 Cal.Rptr. 75, 557 P.2d 507].) This section was enacted in 1970 establishing a limit of four years after the date of injury, and amended in 1975, reducing the limit to three years. It does not appear that either version would bar plaintiff's action in this case, however. The 1970 version contained a tolling provision "for any period during which such person [the defendant] has failed to disclose any act, error, or omission upon which such action is based and which is known or through the use of reasonable diligence should have been known to him." (Stats. 1970, ch. 360, § 1, p. 771.) There is no indication in the record that defendant made disclosure to plaintiff.

The 1975 amendment reduced the limit to three years unless tolled by (1) proof of fraud, (2) intentional concealment or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect. However, insofar as the 1975 amendment reduced the period of limitation, it does not have retroactive effect so as to wipe out plaintiff's claim; plaintiff still had a reasonable time after the effective date of the 1975 amendment in which to act. (*Wells Fargo & Co.* v. *City etc. of S. F.,* 25 Cal.2d 37, 41-42 [152 P.2d 625]; *Miami Valley C. P. Co.* v. *Pacific Nat. Bk.,* 13 Cal.App.2d 621, 623-624 [57 P.2d 233]; *Olivas* v. *Weiner,* 127 Cal.App.2d 597, 600-601 [274 P.2d 476]; *Niagara Fire Ins. Co.* v. *Cole,* 235 Cal.App.2d 40, 43 [44 Cal.Rptr. 889].) The 1975 amendment was effective December 12, 1975, and plaintiff filed his claim eight months later, within a reasonable time.

The order denying the petition under Government Code section 946.6 is reversed.

Kaus, P. J., and Stephens, J., concurred.