RICHARD A. GILLOON, Individually and as Adminis-
trator of the Estate of WINIFRED GILLOON,
Deceased, Appellant, *v.* HUMANA, INC., dba SUN-
RISE HOSPITAL; CHARTER MEDICAL CORPO-
RATION; and HOWARD ZELLHOEFER, M.D.,
Respondents.

No. 13892

September 14, 1984

687 P.2d 80

*Wilkin & Gellner,* Las Vegas, for Appellant.

*Dickerson, Miles, Pico & Mitchell,* Las Vegas; *Beckley, Singleton, DeLanoy & Jemison,* Las Vegas; *Johnson, Pilkington, & Reynolds,* Las Vegas, for Respondents.

## OPINION

By the Court, Gunderson, J.:

This is an action for the wrongful death of Winifred Gilloon, in which the trial court granted summary judgment[1] on the

---

[1] Since both parties appear to assume that the district court treated respondents' motion to dismiss as one for summary judgment, as provided in NRCP 12(b), we will likewise proceed on that assumption.

grounds that the applicable statute of limitations, NRS 41A.097,[2] had run before appellant filed his complaint. All parties appear to agree that the trial court's ruling was error if this court construes NRS 41A.097 in accordance with the reasoning of the California Supreme Court in Larcher v. Wanless, 557 P.2d 507 (Cal. 1976). Because we adopt the holding of the California court, we reverse the trial court's judgment.

A brief outline of the facts will suffice. Appellant alleged in his complaint that in January of 1976 his mother, Winifred Gilloon, underwent surgery for a total knee replacement at respondent Humana's Sunrise Hospital. As a result of the negligent treatment she received there, she developed bedsores. The bedsores worsened, and, for the next few years, Winifred Gilloon was transferred through a series of hospitals and nursing homes, allegedly receiving improper treatment at each. In September of 1976, appellant placed her in Moffitt Hospital in San Francisco where for the first time her condition was properly diagnosed and treated. By this time, however, the complications arising from her maltreatment necessitated surgery, as a result of which she died on October 8, 1979.[3] On August 13, 1981, appellant filed this action.

NRS 41A.097 provides that an action may not be commenced more than four years after the injury has occurred or more than two years after plaintiff has or should have discovered it. The question presented to us is whether, in a wrongful death action, the term "injury" refers to the injury to the decedent through the negligent treatment which led to his or her death or, rather, refers to injury to the plaintiff through the death of the decedent. Respondents contend, and the trial court assumed, that the former interpretation is the correct one. We disagree. We hold that in an action for wrongful

[2]NRS 41A.097 provides in pertinent part:

1. Except as provided in subsection 2, an action for injury or death against a provider of health care shall not be commenced more than 4 years after the date of injury or 2 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first, for:

(a) Injury to or wrongful death of a person, based upon alleged professional negligence of the provider of health care;

(b) Injury to or wrongful death of a person from professional services rendered without consent; or

(c) Injury to or wrongful death of a person from error or omission in practice by the provider of health care.

[3]Appellant does not allege any negligence in the operation. His contention is that but for his mother's negligent treatment at respondents' hands, surgery would not have been necessary and she would not have died.

These facts are gleaned from appellant's complaint and affidavits. In an appeal from a summary judgment we must of course accept them as true. *See* Short v. Hotel Riviera, Inc., 79 Nev. 94, 378 P.2d 979 (1963).

death, the injury contemplated by NRS 41A.097 is the death of the malpractice victim and the two-year period of limitation begins to run from the time of death or the discovery thereof.[4]

This result follows logically from the nature of the wrongful death cause of action. NRS 41.085 creates an independent cause of action in the heirs and personal representatives of one whose death is caused by the wrongful act or neglect of another. The right of action is not concerned with the wrong done to the decedent but only with the wrong done to the heirs through the decedent's death; consequently, it has no existence before the death of the decedent has occurred. *See* Perry v. Tonopah Mining Co., 13 F.2d 865 (D. Nev. 1915); Peers v. Nevada Power, Light and Water Co., 119 F. 400 (D. Nev. 1902); *see also* Parker v. Chrysler Motors Corp., 88 Nev. 560, 502 P.2d 111 (1972). With these principles in mind, we are not persuaded that the Legislature intended to modify the general rule by using the term "injury" to refer to the harm to the decedent rather than to the heirs.

The California Supreme Court reached the same conclusion in Larcher v. Wanless, 557 P.2d 507 (Cal. 1976), when construing the California medical malpractice statute of limitations, which in relevant part is nearly identical to ours. The court considered the harsh results that would flow from a construction allowing the limitation period to commence with the heirs' discovery of the victim's injury. If the malpractice victim lived long enough after the discovery of the negligent treatment, the statute of limitations would extinguish the cause of action in the heirs before it had ever accrued.[5] The court found no evidence of a legislative purpose to "so truncate the recovery rights of the heirs of malpractice victims." *Id.* at 511. The legislative objective had been to circumscribe the "discovery doctrine," under which as long as the plaintiff had no knowledge of the injury, the commencement of the limitation period could be indefinitely postponed. The statute limited the length

[4]It is to be presumed that the Legislature intended the term "injury" to have the same meaning in the parallel two-year and four-year limitation periods of the statute. Consequently, in an action for wrongful death the overall four-year period of limitation commences from the death of the malpractice victim. Because in most cases the death of the victim and its discovery by the heirs are contemporaneous, the four-year limitation is likely to be of less importance than in actions for malpractice.

[5]Under NRS 41A.097 this would happen if the victim lived for more than two years after the discovery of the maltreatment. Under the California statute the analogous period is one year. *See* California Code of Civil Procedure § 340.5.

of time during which the possibility of suit could be perpetuated, by providing for an absolute four-year limitation beginning from the date of the injury. This legislative purpose would still be accomplished by a limitation period commencing on the date that the death of the decedent first created a right of recovery in the heirs.

The legislative history of NRS 41A.097 indicates that it was based on the California statute construed in *Larcher. See* Hearing on A.B. 303 before the Assembly Comm. on the Judiciary, 56th Session (March 11, 1971) (Comm. Minutes p. 259-260). The minutes show that the Legislature decided to change the one-year discovery period of the California statute to a more generous two-year period, although the former would have led to greater reduction in malpractice exposure. Respondents' interpretation of NRS 41A.097 would attribute to the Legislature a single-minded purpose to limit liability for medical malpractice even at the cost of barring potential plaintiffs from court before they had ever had a chance to bring suit. In line with the reasoning of Larcher v. Wanless, *supra,* we consider this to be a harsh and inequitable result, and we do not find either in the statute, or in the circumstances surrounding its enactment, evidence that such was the legislative intent.

Our construction is also consistent with our reasoning in Massey v. Litton, 99 Nev. 723, 669 P.2d 248 (1983), in which we held that in an action for malpractice the term "injury" in NRS 41A.097 means legal injury, *i.e.* the essential elements of a cause of action, and does not refer merely to the physical harm. The death of the decedent being an essential element of the cause of action for wrongful death, there can be no legal injury until the death has occurred.

Inasmuch as appellant appears to acknowledge that he can obtain all the relief he seeks in a wrongful death action, there is no need to consider other questions. Accordingly, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

MANOUKIAN, C. J., and SPRINGER, MOWBRAY, and STEFFEN, JJ., concur.