744 P.2d 689

Mildred JAMES, the surviving spouse of Maurice James, deceased, on her own behalf and for and on behalf of Linda Bell, Ronald James, and Gerald V. James, the surviving children of Maurice James, Plaintiffs-Appellants,

v.

PHOENIX GENERAL HOSPITAL, INC., an Arizona corporation; Osteopathic Surgeons, Ltd., an Arizona corporation; Robert Ostwinkle, Defendants-Appellees.

Nos. 1 CA–CIV 8251, CV–86–0535–PR.

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 28, 1986.

Leonard and Clancy, P.C. by Kenneth P. Clancy, Phoenix, for plaintiffs-appellants.

Fennemore, Craig, von Ammon, Udall & Powers by Timothy Berg, Douglas A. Blaze, R.C. Mitten, J. Gregory Osborne, Phoenix, for defendant-appellee Phoenix General Hosp.

Weyl, Guyer, MacBan & Olson by Thomas G. Bakker, Phoenix, for defendants-appellees Osteopathic Surgeons, Ltd. and Robert Ostwinkle.

## OPINION

JACOBSON, Presiding Judge.

In this action for wrongful death based on alleged medical malpractice, the surviving spouse and children of decedent Maurice James (appellants) appeal the granting of summary judgment in favor of appellees, Phoenix General Hospital, Inc., Osteopathic Surgeons, Ltd., and Robert Ostwinkle, D.O. The appellants present two issues: (1) whether the three-year statute of limitation period in A.R.S. § 12–564(A) is applicable to a medical malpractice wrongful death claim and, if so, whether it should be interpreted as commencing to run on the date of the victim's death; and (2) whether A.R.S. § 12–564(A), if interpreted to run from the date of injury in a wrongful death action, violates article 2, §§ 4 and 13 and article 18, § 6 of the Arizona Constitution. As a cross-question, appellee, Phoenix General Hospital, Inc. contends that the judgment in its favor must be affirmed on an independent ground relied upon by the trial court and unchallenged on appeal.

The operative facts are brief and undisputed. On July 28, 1978, Maurice James underwent surgery to remove his gallbladder. The surgery was performed at Phoenix General Hospital by Robert Ostwinkle, D.O. The surgery was complicated by intraoperative bleeding and continued bile drainage. Immediately after the surgery Dr. Ostwinkle told Mr. and Mrs. James the postoperative bile drainage showed that one of the clips placed on the cystic duct during surgery had become removed. Dr. Ostwinkle further told Mr. James that a test indicated his liver function had been compromised. He told both Mr. and Mrs. James that in his opinion the common duct had been compromised during the surgery and would eventually have to be repaired. Dr. Kasovac, the admitting physician, also told Mr. and Mrs. James right after surgery that a massive intraoperative bleed had occurred during the operation. Dr. Kasovac later told Mr. James it was possible that during the surgery the common duct had been compromised or obstructed.

Mr. James was discharged from the hospital on August 17, 1978. Ten days later he was readmitted to Phoenix General Hospital with a diagnosis of partial common duct obstruction and abscess at the bile drainage site. He was treated and discharged on September 15, 1978. On January 31, 1981, approximately 2½ years after the surgery, Mr. James died. His death was allegedly causally related to the 1978 surgery.

On November 1, 1983, two years and nine months after Mr. James' death and more than five years after the surgery, appellants filed this wrongful death action. The complaint alleged that Dr. Ostwinkle had performed the surgery negligently, injuring Mr. James and thereby causing his death. The complaint also alleged that Phoenix General Hospital was liable pursuant to *Purcell v. Zimbelman*, 18 Ariz.App. 75, 500 P.2d 335 (1972), because it "knew or should have known that the Defendant Robert Ostwinkle was not competent to conduct the surgical case of Maurice James." All defendants moved for summary judgment on the ground that the action was barred under the three-year statute of limitation imposed by A.R.S. § 12–564(A). Phoenix General Hospital also sought summary judgment on the independent ground that appellants were unable to produce expert testimony concerning the standard of care to which a hospital must conform in extending staff privileges to surgeons. The trial court entered summary judgment in favor of all defendants on January 3, 1985, and this appeal followed.

Appellants first contend the trial court erred in failing to hold that the three-year

limitation period of A.R.S. § 12–564(A)[1] did not start to run until Mr. James' death, and that their complaint was therefore timely. They assert it is well settled in Arizona that the wrongful death statute creates an original and distinct claim for damages sustained by the statutory beneficiaries which is not derivative of or a continuation of a claim existing in the decedent and which accordingly does not come into being until the victim's death. *Barragan v. Superior Court,* 12 Ariz.App. 402, 470 P.2d 722 (1970); *Rogers v. Smith, Kline and French Laboratories,* 5 Ariz.App. 553, 429 P.2d 4 (1967). *See* A.R.S. §§ 12–611 through 12–613. Appellants further assert that in *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984), our supreme court held that the limitation provided by A.R.S. § 12–564(A) governs both personal injury and wrongful death claims based on medical negligence. Appellants argue that under *Kenyon* the date of the "injury," as that term is used in A.R.S. § 12–564(A), can only be interpreted in this case to mean the date of death. Under this construction, the appellants' complaint would be timely.

We agree with the appellants that Arizona's wrongful death statute creates an original and independant cause of action in the statutory beneficiaries upon the death of the victim. We do not agree, however, that the date of injury equates with the date of death or that a wrongful death claim based on medical negligence is governed exclusively by the three-year statute of limitations for medical malpractice actions.

In *Kenyon, supra,* the issue was presented as to which statute of limitations applied, the two year wrongful death statute, A.R.S. § 12–542, or the three year medical malpractice statute, A.R.S. § 12–564(A), where the alleged malpractice resulted in death. In that case, the malpractice allegedly occurred when the plaintiff failed to receive a drug known as RhoGAM within 72 hours after delivering her first child. Five years later the plaintiff conceived a second child. Because of the prior failure to administer RhoGAM, the plaintiff's second child was stillborn. One year after the stillbirth, and over six years after the alleged negligence, the mother and father commenced an action for the wrongful death of their second child and for personal injuries suffered by the mother during the second pregnancy.

By a plurality decision, two justices concluded that "the applicable limitation period to both the bodily injury claim of Mrs. Kenyon and the wrongful death claim for the death of the Kenyon baby is set forth in A.R.S. § 12–564(A), which provides that a cause of action for medical malpractice must be commenced within three years 'from the date of injury.'" These same justices went on to determine that "'date of injury' means date on which injury occurs and not the date on which the negligent act occurs."

The "lead" opinion then determined that in fact Mrs. Kenyon suffered an "injury" following the birth of her first child, some 6 years prior to bringing her action, but that she could not reasonably discover this "injury" until the stillborn death of her second child. It is at this point that all four participating justices concur and hold that a statute which would have barred Mrs. Kenyon's cause of action before it was discovered is unconstitutional.[2]

1. Before it was repealed on August 7, 1985, A.R.S. § 12–564(A) provided:

   A cause of action for medical malpractice against a licensed health care provider accrues as of the date of the injury and shall be commenced and prosecuted within three years after the date of injury. In no event shall the time for commencement of legal action exceed three years from the date of injury except as provided in subsections B, C and D.

   The provisions of A.R.S. § 12–564 apply to and govern the instant case by virtue of Laws 1985, ch. 84, § 2.

2. Essentially, the two justices concurring in the "lead" opinion concluded that A.R.S. § 12–564 was unconstitutional under the equal protection clause in article 2, § 13 of the Arizona Constitution; the special concurrence concluded that the statute was unconstitutional under article 18, § 6 of the Arizona Constitution. In a footnote, the author of the "lead" opinion stated that he did not disagree with the view of the special concurrence. *See* f.n. 8, 142 Ariz. at 78, 688 P.2d at 970.

However, the two "concurring" justices intimated no opinion regarding the exclusive application of A.R.S. § 12–564(A) to the wrongful death claim, or whether the "injury" referred to in A.R.S. § 12–564(A) equates with "death" in a wrongful death setting. In fact, the "lead" opinion also failed to equate "death" with "injury" by noting in a footnote:

> We also do not reach the question of whether a death action may be pursued even though the deceased's action for personal injuries was barred before his death.

*Kenyon, supra* at 75, 688 P.2d at 967.

In *Kenyon*, the court simply did not need to resolve these issues, for both the wrongful death action and the malpractice action accrued at the same time—upon the death of the second child, which corresponded with Mrs. Kenyon's "discovery" of the malpractice action. The subsequent suit on both actions was brought within one year of that date.

■ Under these circumstances, we could properly consider the "exclusivity" holding of the "lead" opinion, that the malpractice statute of limitations applies to a death action to be dicta or we could apply the general proposition that plurality decisions do not fall under the normal rules of *stare decisis* because they are deemed to have no precedential authority. *See Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) (judgment entered by an equally divided court is not entitled to precedential weight, citing *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)); *Audubon-Exira Ready Mix, Inc. v. Illinois Central Gulf R. Co.,* 335 N.W.2d 148 (Iowa 1983) (statutory interpretation in which majority of members of Supreme Court did not join falls outside rule of *stare decisis* and was not binding precedent); *Frank v. City of Cody,* 572 P.2d 1106 (Wyo.1977) (no weight given to affirmance of judgment by equally divided court since such decision does not settle any principle); and *Commonwealth v. Bracero,* 325 Pa.Super. 494, 473 A.2d 176 (1984) (plurality opinions have no precedential authority).

In any event, we feel reasonably comfortable in stating that the issue of which statute of limitations applies to a death resulting from medical malpractice is still an open question in this state. In resolving this issue, we note that A.R.S. § 12–564 states that it applies to actions for "injury" and nowhere does that statute mention wrongful death claims. The two supreme court justices who reached this issue in *Kenyon,* however, concluded that A.R.S. § 12–564 applied to the fetal death claim in that case because the definitions statute in Arizona's health care legislation defines a "cause of action for medical malpractice" as an "action for *injury or death* against a licensed health care provider...." (Emphasis added.) A.R.S. § 12–561(2). Given this definition of a medical malpractice action, there is little doubt that former A.R.S. § 12–564(A) was intended to apply to malpractice claims involving an injury or a death.

On the other hand, by its terms A.R.S. § 12–542 can also be applied to this case since it is a claim for wrongful death, regardless of its origin in medical negligence. Thus, we are presented with a situation where arguably both statutes of limitation apply to the facts. Absent legislative indicia to the contrary,[3] under these circumstances we see no reason to adopt a rigid approach of exclusive application of either of the two applicable statutes. In our opinion no conflict is created in applying both of these statutes to the wrongful death claim in this case, as long as the statutes are read to allow the plaintiffs the longer of the two limitation periods. Thus, we hold in this case that both A.R.S. §§ 12–542 and –564(A) are applicable to the appellants' claim and that the appellants are entitled to the benefit of the longer of the two periods of limitation.[4]

---

3. By amendment to A.R.S. § 12–542, medical practice actions, even those resulting in death, are now covered by the two year statute applicable to all personal injuries.

4. We note here that the supreme court in *Kenyon* did not address the question of whether the two statutes of limitations can be reconciled by

Under this approach, the question becomes one of applying both statutes to the facts in order to determine whether the appellants timely filed their complaint under either of the two applicable periods of limitation. In making this determination we must also decide when each of the two statutes commences to run under the facts.

As plainly articulated in A.R.S. § 12–564(A) and as discussed by the "lead" decision in *Kenyon,* the three-year period of limitation for medical malpractice claims begins to run from the date of injury to the victim. Under the "discovery rule" of *Mayer v. Good Samaritan Hospital,* 14 Ariz.App. 248, 482 P.2d 497 (1971), which, as stated, was expressly revived by all four justices participating in *Kenyon,* the date of injury is deemed to occur for purposes of accrual of the cause of action at the time when the injured plaintiff knew or should have known of the defendant's negligence. In this case, the trial court found, and evidence certainly supports that finding, that the date of injury to Mr. James was July 28, 1978. This is the date when Mr. James was first informed by Drs. Ostwinkle and Kasovac that there had been a massive intraoperative bleed, that the common bile duct probably had been obstructed and that further repair would be necessary.

The only other possible date on which the injury could have occurred was on August 27, 1978, the date when Mr. James was readmitted to the hospital for partial common duct obstruction and abscess at the bile drainage site. Even if we were to accept the latter date as the date of injury, however, the result would be the same under our analysis. In any event we hold that the three-year period in A.R.S. § 12–564(A) began to run from the date of "injury" to Mr. James in 1978 and therefore a malpractice action brought after 1981 would be time barred.

While it is true that a wrongful death claim is an original and independent statutory cause of action which only arises after the death of the victim, it does not necessarily follow that there was no cause of action in this case until the death of Mr.

James. To the contrary, Mr. James lived for two and one-half years after the allegedly negligent conduct. Thus, Mr. James and anyone else injured by that conduct had a cause of action in tort which accrued long before Mr. James died. We therefore reject the contention that the "injury" in this case is that suffered by the beneficiaries upon the death of Mr. James. In our opinion, A.R.S. § 12–564(A) is incapable of such a reading.

Although we hold that A.R.S. § 12–564(A) commenced to run from July 28, 1978, as opposed to the date Mr. James died, the latter date is germane to our analysis. There is no doubt that in Arizona the two-year limitation period in A.R.S. § 12–542 for wrongful death claims begins to run from the date of death. *Gomez v. Leverton,* 19 Ariz.App. 604, 509 P.2d 735 (1973); *Rogers v. Smith, Kline & French Laboratories,* 5 Ariz.App. 553, 429 P.2d 4 (1967).

In this case, A.R.S. § 12–542 began to run on January 31, 1981, the date on which Mr. James expired. Thus, the two-year wrongful death period of limitation expired on January 31, 1983, or approximately 10 months before the filing of this action. In sum, under either of the two applicable statutes of limitation, the appellants' complaint was not timely filed. Therefore, we hold that this lawsuit is time barred by statute.

Appellants next argue that A.R.S. § 12–564(A) violates Arizona's constitutional prohibition against laws limiting the amount of damages recoverable for death or injury, if it is interpreted in this case to run from the date of the initial injury, as opposed to the date of death. *See* Ariz. Const. art. 18, § 6. Appellants also make the same argument under the due process and equal protection clauses found in article 2, §§ 4 and 13 of our constitution.

We need not decide these constitutional issues, however, because we find that the appellants have no standing to raise them. The doctrine of standing requires that par-

applying both of them to medical malpractice

death claims.

ties suffer some injury in fact in order to assert a constitutional challenge to the laws or actions of the state. *See Matter of Adoption of Hadtrath,* 121 Ariz. 606, 592 P.2d 1262 (1979). For this court to confer standing, the application of a particular feature of the challenged statute to the complaining party must have a harmful effect upon that party. *State v. Smith,* 130 Ariz. 74, 634 P.2d 1 (App.1981).

In this case, the three-year period of limitation under A.R.S. § 12–564(A) did not expire until July 28, 1981, approximately six months following the death of Mr. James. As stated earlier, Mr. James and others injured by the alleged negligence of the appellees—such as the appellants in this case—had two and one-half years following the initial injury during which they could have filed an action for damages. More importantly, in addition to those two and one-half years, the appellants actually had about six months during which they could have timely filed this wrongful death claim, but for whatever reason failed to do so. Furthermore, by our judgment in this case, the appellants had a full two years after the death of Mr. James during which to commence this litigation.

Under these circumstances, we fail to see how the appellants were injured in fact or harmfully affected by interpreting A.R.S. § 12–564(A) to run from the date of the initial injury. They lost their cause of action, not because of the retroactive application of a statute of limitations, but rather because they were not diligent in pursuing their claim. There simply was no abrogation of the appellants' claim in this case. Without this requisite injury, the appellants cannot be considered as an aggrieved party with standing to raise the constitutional issues argued in their brief.

The only remaining issue is the cross-question presented by appellee Phoenix General Hospital of whether the judgment in its favor must be affirmed on independent grounds relied on by the trial court and not challenged by the appellants in the opening brief. The independent ground for summary judgment in favor of the hospital stems from the appellants' failure to produce any expert testimony regarding the proper standard of care for hospitals in extending staff privileges to surgeons.

We agree with the hospital in this case that the appellants' failure to raise the standard of care issue in the opening brief constitutes a waiver of the issue on appeal. *Kadish v. Kallof,* 3 Ariz.App. 344, 414 P.2d 193 (1966). Since the trial court's granting of summary judgment on this issue is uncontested, we affirm the judgment as to Phoenix General Hospital on this basis.

In conclusion, we hold that in this case applying either the three-year statute of limitation in A.R.S. § 12–564(A) or the two-year statute of limitation in A.R.S. § 12–542 results in the claim of the appellants being barred. The summary judgment in favor of Phoenix General Hospital is affirmed based on the independent and uncontested grounds in the record to support the judgment.

The judgment is accordingly affirmed.

CONTRERAS, J., concurs.

CORCORAN, Judge, specially concurring:

I concur in the result reached by the majority. I disagree, however, with the holding that both A.R.S. §§ 12–542 and –564(A) are applicable to the appellants' claim. I believe that under *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984), A.R.S. § 12–564(A) exclusively governs this medical malpractice claim. *Id.* at 72, 688 P.2d at 964. Our supreme court's rationale for its decision in *Kenyon* is sound and should be followed in this case:

A.R.S. § 12–564 is part of the malpractice legislation enacted by the state legislature in 1976 in response to a perceived malpractice crisis.... [I]t was intended by the legislature as a remedial act in response to the difficulties which the medical profession was experiencing in obtaining malpractice insurance.... We can conceive of no reason why the legislature would have intended such a remedial measure to apply to malpractice claims where there had been injury, but not to malpractice claims where there

**594**

had been death. It is true that § 12–564 states that it applies to actions for "injury" and does not mention wrongful death claims. However, that statute is a part of Title 12, Chapter 5.1, entitled "Actions Relating To Health Care." The first statute in the chapter, A.R.S. § 12–561, contains definitions applicable to the entire chapter and provides that a " 'cause of action for medical malpractice' means an action for injury or death against a licensed health care provider...." Thus, the word "injury" used in § 12–564(A) with regard to the limitation period for "medical malpractice" actions includes "death" as an "injury."

*Id.*

The date of Mr. James' injury was either July or August of 1978—the time when he first knew or should have known of his doctor's alleged malpractice. *See id.* at 72–76, 87, 688 P.2d at 964–68, 979. The three-year limitations period in A.R.S. § 12–564(A) began to run from this date, and therefore, the complaint in this action, filed on November 1, 1983, was time barred.

Our legislature has recently repealed A.R.S. § 12–564 and amended A.R.S. § 12–542 to provide a two-year statute of limitations "[f]or injuries done to the person of another including causes of action for medical malpractice as defined in § 12–561." *See* Laws 1985, ch. 84, §§ 1, 3. A "cause of action for medical malpractice" as defined in A.R.S. § 12–561(2) includes actions "for injury or death." Consequently, this issue involving the exclusive applicability of A.R.S. § 12–564(A) has been rendered moot by our legislature for future medical malpractice actions. I believe, however, that the correct disposition of the instant case requires adherence to our supreme court's holding in *Kenyon.*