744 P.2d 695

Mildred **JAMES**, the surviving spouse of Maurice James, deceased, on her own Behalf and for and on Behalf of Linda Bell, Ronald James, and Gerald V. James, the surviving children of Maurice James, Plaintiffs–Appellants,

v.

**PHOENIX GENERAL HOSPITAL, INC.,** an Arizona corporation; Osteopathic Surgeons, Ltd., an Arizona corporation; Robert Ostwinkle, Defendants–Appellees.

Rafaela **PARICH**, the surviving spouse of Richard M. Parich, on her own Behalf and for and on Behalf of Norma Parich Valenzuela, Mary Ann Parich Mendez, Richard M. Parich, Jr., and Mark Parich, the surviving children of Richard M. Parich, Plaintiffs–Appellants,

v.

**SAMARITAN HEALTH SERVICES, INC.,** an Arizona corporation, d/b/a Good Samaritan Medical Center; Surgical Specialists, P.C., an Arizona corporation; Stevenson, Cryan & Church, a business entity; Scottsdale Medical Imaging, Ltd., an Arizona corporation; George A. Streza; Donald A. Cryan; Richard M. Spiegel; and Does I Through XXX, Defendants–Appellees.

Nos. CV 86–0535–PR, CV 86–0543–PR.

Supreme Court of Arizona,
In Banc.

Oct. 1, 1987.

Leonard and Clancy, P.C. by Kenneth P. Clancy, Phoenix, for plaintiffs-appellants James and Parich.

Fennemore, Craig, von Ammon, Udall & Powers, P.C. by Timothy Berg, Roger C. Mitten and J. Gregory Osborne, Phoenix, for defendant-appellee Phoenix General Hosp.

Weyl, Guyer, MacBan & Olson, P.A. by Thomas G. Bakker, Duane A. Olson, Robert H. Kleinschmidt, Phoenix, for defendants-appellees Osteopathic Surgeons, Ostwinkle, Samaritan Health Services and Cryan.

Snell & Wilmer by Lawrence F. Winthrop, Phoenix, for defendant-appellee Surgical Specialists.

Jennings, Strouss & Salmon by Jefferson L. Lankford, Gary L. Stuart and Kevin J. Worthen, Phoenix, for defendants-appellees Scottsdale Medical Imaging, Streza, Spiegel and Does.

CAMERON, Justice.

I

In two separate cases, the plaintiffs have petitioned for review of court of appeals' decisions affirming the award of summary judgment for the defendant health-care providers. *James v. Phoenix General Hospital,* 154 Ariz. 588, 744 P.2d 689 (App. 1986); *Parich v. Samaritan Health Services, Inc.,* No. 1 CA–CIV 8440 (Sept. 2, 1986) (memo. decision). We consolidated the two cases for purposes of review. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and Ariz. R.Civ.App. P., 17A A.R.S.

II

We must decide which statute of limitations is applicable in wrongful death actions based on medical malpractice and when the actions accrue. The operative facts of both claims are brief and undisputed.

III

A. *James* Wrongful Death Claim

On 28 July 1978, Maurice James underwent gallbladder surgery performed by Dr. Robert Ostwinkle, at Phoenix General Hos-

pital. After the operation both the surgeon and the admitting physician, Dr. Kasovac, told Mr. and Mrs. James that the surgery was complicated by intraoperative bleeding, that Mr. James' common duct had been compromised and that it would have to be repaired.

Ten days after being discharged from the hospital, Mr. James was readmitted with a diagnosis of partial common duct obstruction and abscess at the bile drainage site. He was treated and, one month later, discharged. On 31 January 1981, approximately 2½ years after the surgery, Mr. James died. His death allegedly was causally related to the 1978 surgery.

On 1 November 1983, Mr. James' survivors (petitioners) filed this wrongful death action, alleging that Dr. Ostwinkle had performed the surgery negligently, injuring Mr. James and thereby causing his death. Petitioners also alleged that Phoenix General Hospital was liable because it "knew or should have known that Defendant Robert Ostwinkle was not competent to conduct the surgical case of Maurice James." All defendants moved for summary judgment on the grounds that the action was barred under the three-year medical malpractice statute of limitation imposed by A.R.S. § 12–564(A). Phoenix General Hospital moved for summary judgment on the independent grounds that petitioners were unable to produce expert witness testimony concerning the standard of care to which a hospital must conform in extending staff privileges to surgeons. The trial court entered summary judgment in favor of all defendants.

### B. *Parich* Wrongful Death Claim

Richard Parich was admitted on 11 October 1980 to the emergency room of Good Samaritan Hospital for injuries sustained in an automobile accident. On 13 October 1980, Dr. Richard Spiegel performed an "upper GI series" on Mr. Parich, using the element barium as a contrast medium.

On 15 October 1980, Dr. George Streza performed surgery on Mr. Parich, at which time it was discovered that he was suffering from massive barium peritonitis, allegedly caused by the escape of barium from the GI tract into the abdominal cavity. As a result of the peritonitis, Mr. Parich developed extensive systemic infection and multi-organ failure. Mr. Parich remained comatose after the surgery and died on 15 November 1980 from complications related to the infection and organ failure. Mr. Parich was survived by his spouse, Rafaela Parich, and by his four children (petitioners).

The petitioners filed this wrongful death action on 1 November 1983, alleging that the defendants were negligent in their medical treatment of Mr. Parich and thereby proximately caused his death. The defendants moved for summary judgment on grounds that, under the three-year medical malpractice limitation in A.R.S. § 12–564(A), the complaint was not timely filed. The defendants alleged that the cause of action accrued on the date of injury—in this case, 15 October 1980—and that it was extinguished by statute on the same date in 1983, or approximately two weeks prior to the filing of the complaint. The trial court granted the defendants' motion for summary judgment.

### IV

The Arizona Court of Appeals, Division One affirmed in each case the summary judgment awards. The court first issued an opinion in *James,* upon which it relied in deciding *Parich,* a memorandum decision. Our discussion of the court of appeals' analysis cites to the *James* decision, but is applicable to *Parich* as well.

To the court of appeals, the petitioners argued that the wrongful death statute [1]

---

1. The wrongful death statute provides:
   When death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in

respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and *although the death was caused un-*

created in the decedent's survivors an original claim which came into being only at death and that because the death resulted from medical malpractice, then the three-year statute of limitations for medical malpractice actions,[2] rather than the two-year limitation period generally applicable to wrongful death actions,[3] should govern and commence at the date of death. We agree. In support of their argument, petitioners cited *Kenyon v. Hammer*, 142 Ariz. 69, 688 P.2d 961 (1984).

The issue presented in *Kenyon* was "whether the statute of limitations for medical malpractice actions (A.R.S. § 12–564(A)) is constitutional as applied to this case." 142 Ariz. at 71, 688 P.2d at 963. The constitutionality of A.R.S. § 12–564(A) was at issue because the plaintiff husband and wife commenced an action for the stillbirth of their second child and for the wife's personal injuries one year after the stillbirth, but more than six years after the alleged medical malpractice. The malpractice allegedly occurred when the doctor failed to administer RhoGAM to the wife within seventy-two hours after delivering her first child. Five years later, the wife conceived a second child. Due to the failure to receive RhoGAM, the plaintiffs' second child was stillborn.

In considering whether the suit was timely filed, two members of a four judge court[4] held that "as used in the present statute (A.R.S. § 12–564(A)) 'date of injury' means date on which injury occurs and not the date on which the negligent act occurs." 142 Ariz. at 75, 688 P.2d at 967. All members of the court recognized the right to sue for an injury as a fundamental right protected by Arizona Constitution article 18, section 6. *Id.* at 83, 88, 688 P.2d at 975, 980. The lead opinion held A.R.S. § 12–564 to be unconstitutional for violating the equal protection provisions of Arizona Constitution article 2, section 13, whereas the concurring opinion held A.R.S. § 12–564 unconstitutional because it "abrogates an action for damages even before the action arises or can reasonably be discovered...." *Id.* at 87–88, 688 P.2d at 979–80. All four justices agreed, however, that "the three-year statute of limitations of A.R.S. § 12–564 [would] remain in effect except that the courts of this state shall follow the discovery rule[5] as set out in *Mayer v. Good Samaritan Hospital*, 14 Ariz.App. 248, 482 P.2d 497 (1971)." *Kenyon*, 142 Ariz. at 87, 88, 688 P.2d at 979, 980. Accordingly, the court held that although the wife suffered an "injury" when her doctor failed to administer RhoGAM, such an injury was "both undiscovered and undiscoverable" by the plaintiffs until the

der such circumstances as amount in law to murder in the first or second degree or manslaughter.
A.R.S. § 12–611.

2. Before it was repealed on 7 August 1985, A.R.S. § 12–564(A) provided:
A cause of action for medical malpractice against a licensed health care provider accrues as of the date of the injury and shall be commenced and prosecuted within three years after the date of injury. In no event shall the time for commencement of legal action exceed three years from the date of injury except as provided in subsections B, C and D.
The provisions of A.R.S. § 12–564 apply to and govern the instant case by virtue of Laws 1985, ch. 84, § 2.

3. The general statute of limitations provision in effect at the time the instant cause of action accrued provided:
Except as provided in §§ 12–551 and 12–564, there shall be commenced and prose-

cuted within two years after the cause of action accrues, and not afterward, the following actions:
1. For injuries done to the person of another.
2. For injuries done to the person of another when death ensues from such injuries, which action shall be considered as accruing at the death of the party injured.
A.R.S. § 12–542(1), (2) (1982).

4. Justice Feldman authored the lead opinion in which Justice Cameron concurred. The concurring opinion, written by Justice Hays and signed by Chief Justice Holohan, simply addressed the constitutionality of A.R.S. § 12–564 under the abrogation clause of Ariz. Const.Art. 18, § 5. Vice Chief Justice Gordon did not participate.

5. A medical malpractice action accrues and the statute of limitations begins to run on the date the victim discovers or reasonably should discover that he or she had been injured by the negligence of the treating physician. *Kenyon v. Hammer*, 142 Ariz. at 73, 688 P.2d at 965.

stillbirth of their second child. Therefore, the wife's claim for personal injury, utilizing the discovery rule, was timely filed under A.R.S. § 12–564.

Addressing the wrongful death claim, the *Kenyon* court concluded that the medical malpractice statute, A.R.S. § 12–564(A), rather than the general statute of limitations for wrongful death actions, A.R.S. § 12–542(2), was applicable, reasoning:

> A.R.S. § 12–564 is part of the malpractice legislation enacted by the state legislature in 1976 in response to a perceived malpractice crisis. *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977). Enacted later than the wrongful death statute, it was intended by the legislature as a remedial act in response to the difficulties which the medical profession was experiencing in obtaining malpractice insurance. *Id.* at 584, 570 P.2d at 752. We can conceive of no reason why the legislature would have intended such a remedial measure to apply to malpractice claims where there had been injury, but not to malpractice claims where there had been death. It is true that § 12–564 states that it applies to actions for "injury" and does not mention wrongful death claims. However, that statute is a part of Title 12, Chapter 5.1, entitled "Actions Relating to Health Care." The first statute in the chapter, A.R.S. § 12–561, contains definitions applicable to the entire chapter and provides that a " 'cause of action for medical malpractice' means an action for injury or death against a licensed health care provider...." Thus, the word "injury" used in § 12–564(A) with regard to the limitation period for "medical malpractice" actions includes "death" as an "injury."

*Kenyon*, 142 Ariz. at 72, 688 P.2d at 964.

Applying this reasoning, the court in *Kenyon* held that the statute on the wrongful death claim "began to run on the date on which the child suffered some injury. The cause of action was filed in the case at bench within two years from the date the *Kenyon* baby was conceived. Since A.R.S. § 12–564(A) allows three

years from the date of the injury, the wrongful death action is not barred." *Id.* at 75, 688 P.2d at 967 (footnote omitted).

The court of appeals in the instant cases did not feel bound under *Kenyon* to apply A.R.S. § 12–564(A) to wrongful death cases resulting from medical malpractice for two reasons: 1) discussion of which statute of limitations to apply was dicta, since both the wrongful death action and the malpractice action were brought within one year of the stillbirth, and 2) plurality decisions do not fall under the normal rules of *stare decisis* because they are deemed to have no precedential authority. Considering "the issue of which statute of limitations applies to a death resulting from medical malpractice" to be an "open question in this state," the court held that both A.R.S. §§ 12–542 and –564(A) are applicable so long as the petitioners receive the benefit of the longer of the two periods of limitation.

The court of appeals also held that the petitioner's failure to raise the standard of care issue in its opening brief constituted a waiver of this issue on appeal and, accordingly, affirmed the summary judgment as to Phoenix General Hospital on that basis.

## V

We are presented first with the question of whether the legislature intended to alter the accrual and limitation provisions of the wrongful death statute by enacting § 12–564(A) and § 12–561(2), both dealing with medical malpractice actions. In interpreting a statute we must give effect to the legislative intent. *Mardian Construction Co. v. Superior Court*, 113 Ariz. 489, 492, 557 P.2d 526, 529 (1976). We infer this intent from the language used in the context of the statute and the entire act of which it is a part. *Grant v. Board of Regents*, 133 Ariz. 527, 529, 652 P.2d 1374, 1376 (1982). Unless the context requires otherwise, the language used has its usual meaning. *McIntyre v. Mohave County*, 127 Ariz. 317, 319, 620 P.2d 696, 698 (1980).

The Arizona Legislature, in response to a perceived crisis regarding medical malpractice liability insurance coverage, met in spe-

cial session during January 1976 to enact various laws designed to ensure the availability and affordability of insurance for health care providers. Minutes of House Committee on Health, 32d Legis., 1st Spec. Sess. 1 (Jan. 15, 1976) (House Bill 2001). Statutory provisions concerning causes of action for medical malpractice were amended.[6] A.R.S. title 12, ch. 5.1 (Actions Relating to Health Care). Section 12–564(A), as enacted, provided an accrual date for a medical malpractice action as of the "date of injury" and a three-year period of limitation. *See supra* note 2. Section 12–561(2), which still is in effect, provides:

> 'Medical malpractice action' or 'cause of action for medical malpractice' means an action for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions....

As a result of the malpractice crisis, the medical profession nationwide urged state legislatures, including Arizona's, to impose new constraints on malpractice actions. *See* Minutes of the Arizona House Committee on Health, *supra;* Robinson, *The Medical Malpractice Crisis of the 1970's: A Retrospective,* 49 LAW & CONTEMP. PROBS. 5, 10 (Spring 1986). The legislative response affected primarily legal rules and insurance practices. House Bill 2001, enacted 27 February 1986, addressed a variety of concerns by providing professional liability insurance through a joint underwriting association, by establishing medical liability review panels, by prescribing legal rules governing medical malpractice actions and by other provisions as well. *See* 1976 Ariz. Sess. Laws, 32d Legis., 1st Spec. Sess. ch. 1. Shortly after the enactment of House Bill 2001, we examined the constitutionality of medical review panels in *Eastin v. Broomfield,* 116 Ariz. 576, 570 P:2d 744 (1977), where we stated:

The panel provision was one of the several provisions enacted by the Arizona legislature in an effort to curb rising medical malpractice insurance premiums. At the time the Act was enacted, there was evidence that medical malpractice insurance costs, as well as hospital professional liability costs, were doubling every three years. (Arizona Medical Malpractice Insurance Study, Booz, Allen Consulting Actuaries, prepared for the Arizona Legislative Council.)

By providing a system whereby the meritorious claims could be separated from the frivolous ones prior to trial and pretrial settlements would be encouraged, the Act promoted a legitimate legislative purpose.

*Id.* at 583, 570 P.2d at 751.

A particular aspect of the insurance problem was the "long tail" of malpractice claims caused by the slow development and bringing of claims, which increased the uncertainty inherent in projecting future payouts. Robinson, *supra,* at 10. To help solve the "long tail" problem, legislative reforms and modified statutes of limitations, were used to eliminate the discovery rule or limit it to cases involving foreign substances accidently left in the body or fraudulently concealed therein. *See, e.g.,* A.R.S. § 12–564(A), (B), and (C); *see also* Robinson, *supra,* at 21–22. A comparison of former § 12–542(B) with § 12–564 as enacted in 1976 demonstrates the Arizona Legislature's intent to address the "long tail" problem. Significantly, § 12–564(A), as enacted, eliminated the discovery rule in general malpractice cases [7] and reduced the statute of limitations period from six years to three years. The effect of altering the statute of limitations was "to curtail the number of claims." Robinson, *supra,* at 22.

---

**6.** Prior to 1976, the statutory provision for medical malpractice was found in A.R.S. § 12–542(B):

> A cause of action for injury or death against a physician or surgeon ... for error or omission ... shall accrue as of the date of injury and shall be commenced and prosecuted within six years after the date of injury or two

years after the injured party discovers or through the use of reasonable diligence should have discovered the malpractice....

**7.** We recognized the discriminatory and abrogative effect of A.R.S. § 12–564(A) in *Kenyon* and held it to be unconstitutional if applied without the discovery rule. *See supra* note 6.

Recognizing that the intent of the legislature in enacting the 1976 malpractice statutes was to shorten the period during which malpractice claims could be brought, we must determine the effect of § 12–561(2) and § 12–564(A) on wrongful death actions based on medical malpractice. Section 12–564(A) specifically referred to "[a] cause of action for medical malpractice" with "medical malpractice" being defined in § 12–561(2) as "an action for injury or death against a licensed health care provider."[8] We agree with the statement from *Kenyon* that: "[W]e can conceive of no reason why the legislature would have intended such a remedial measure to apply to malpractice claims where there had been injury, but not to malpractice claims where there had been death." 142 Ariz. at 72, 688 P.2d at 965. By use of the phrase, "an action for injury or *death*" to define medical malpractice, the legislature clearly identified a wrongful death action based on medical malpractice as a "cause of action for medical malpractice" under § 12–561(2).

Arizona's wrongful death act, A.R.S. § 12–611, confers an original and distinct cause of action on the survivors of the decedent. *Mariscal v. American Smelting & Refining Co.*, 113 Ariz. 148, 548 P.2d 412 (1976); *Huebner v. Deuchle*, 109 Ariz. 549, 514 P.2d 470 (1973); *Halenar v. Superior Court*, 109 Ariz. 27, 504 P.2d 928 (1972); *Schoenrock v. CIGNA Health Plan*, 148 Ariz. 548, 715 P.2d 1236 (App. 1985). Section 12–611 does not, however, contain an accrual date for a wrongful death action nor does it provide a statute of limitations. For such information, it is necessary to consult the general statute of limitations, A.R.S. § 12–542.

The introductory language of § 12–542 specifically excepts §§ 12–551 and 12–564 from its provisions. This exception clause was inserted into § 12–542 at the same time that §§ 12–561 and 12–564 were enacted. By operation of this exception clause, wrongful death actions based on medical malpractice are not governed by § 12–542(2), but rather are controlled by § 12–564(A). Accordingly, a wrongful death action based on medical malpractice "accrues as of the date of the injury" and must be "commenced and prosecuted within three years after the date of the injury." § 12–564(A).

We note that other state courts have been asked to reconcile legislation aimed at curtailing medical malpractice claims with pre-existing statutes governing the cause of action for wrongful death. The uncertainty usually arises because the medical malpractice legislation did not expressly amend the wrongful death statute, yet made reference to actions for death resulting from medical malpractice. The state courts have recognized that the issue must be decided by construing the intent of the state legislature in enacting the restrictive medical malpractice statute and the effect of such a statute, if any, upon the right to bring a wrongful death action.[9] Although no clear weight of authority has developed in these other jurisdictions as to whether the medical malpractice accrual date and statute of limitations should apply or the wrongful death accrual date and statute of limitations should apply when the genesis of the wrongful death action was medical malpractice, two general trends are discernible.

In one direction are those states that adhere to their prior interpretations of the

---

**8.** The language used to define a medical malpractice action in § 12–561(2) was derived from repealed § 12–542(B). *See supra* note 6.

**9.** *See, e.g., McMickens v. Waldrop,* 406 So.2d 867, 869 (Ala.1981) ("we must decide this case by construing the intent of the Alabama Legislature in passing the Alabama Medical Liability Act"); *Frady v. Hedgcock,* 497 N.E.2d 620, 622 (Ind.Ct.App.1986) ("Viewed from the historical perspective we believe the conclusion is inescapable that our General Assembly intended that all actions the underlying basis of which is alleged

medical malpractice are subject to the [medical malpractice] act."); *Kensinger v. Kippen,* 390 N.W.2d 815, 818 (Minn.Ct.App.1986) ("[T]his interpretation of the wrongful death statute is consistent with the legislature's policy decision to have a shorter limitations period for malpractice cases."); *but see Larcher v. Wanless,* 18 Cal.3d 646, 650, 557 P.2d 507, 511, 135 Cal.Rptr. 75, 79 (1976) ("We have found no persuasive evidence of a legislative purpose to so truncate the recovery rights of the heirs of malpractice victims.").

wrongful death statutes and hold that the cause of action for wrongful death is separate and independent from the decedent's action for personal injury and therefore controlled exclusively by the statutory procedures of the wrongful death statute.[10] As a claim independent from the decedent's personal injury claim, the cause of action for wrongful death in most of these states would not be time-barred by the expiration of the statute of limitations for the personal injury claim before the date of death.[11]

In the other direction are courts which interpret the medical malpractice statute consistent with legislative intent to impose constraints on malpractice actions so that wrongful death actions arising from medical malpractice are procedurally controlled

10. *See, e.g., Vincent v. F. Hood Craddock Memorial Clinic,* 482 So.2d 270, 272 n. 2 (Ala.1985) ("[T]wo-year limitation period of the Alabama Wrongful Death Statute, . . . and not the four-year period of the Alabama Medical Liability Act, . . . would be applicable to an action for wrongful death arising out of an act of medical malpractice."); *McMickens v. Waldrop,* 406 So.2d at 869 ("Our decision should not be construed as holding that the legislature could not modify or change the two-year period now a part of the Wrongful Death Statute; we only hold that by passage of the Medical Malpractice Act, the legislature did not affect that two-year period."); *Clark v. Singer,* 250 Ga. 470, 472, 298 S.E.2d 484, 486 (1983) (application of medical malpractice statute of limitations to medical malpractice wrongful death actions held unconstitutional because it created "two classes of wrongful death claimants in medical malpractice actions: (1) those whose spouse, child or parent died within two years of the negligent or wrongful act or omission, and (2) those whose spouse, child or parent died more than two years after the negligent or wrongful act or omission"); *Hart v. Eldridge,* 250 Ga. 526, 527, 299 S.E.2d 560, 561 (1983) ("[S]tatute of limitations for a wrongful death action emanating from medical malpractice begins to run from the date of death, not from the date of the negligent act or omission of the practitioner."); *Chapman v. Cardiac Pacemakers, Inc.,* 105 Idaho 785, 786–87, 673 P.2d 385, 386–87 (1983) (certified question from federal district court) ("[T]he law is clear that a cause of action for wrongful death accrues on the death of the injured party, and not before. This is so because the cause of action did not accrue to the decedent. . . . The cause of action which accrues to an injured person during his lifetime is altogether separate from the cause of action accruing to the person's heirs should he die of that injury."); *Farmers Bank and Trust Co. v. Rice,* 674 S.W.2d 510, 512 (Ky.1984) ("[T]he statute of limitations for wrongful death actions runs from the death of the decedent, even though there was no viable action for personal injury or medical negligence or malpractice at the time of death."); *Bregant v. Fink,* 724 S.W.2d 337, 338 (Mo.Ct.App.1987) ("an action for a death resulting from malpractice is a wrongful death action, not a malpractice action."); *Krowicki v. St. Elizabeth Hosp.,* 113 A.D.2d 1023, 1024, 494 N.Y.S.2d 590, 591 (N.Y.App.Div.1985) (action for wrongful death was governed by two-year period of limitation for commencement of wrongful death actions, and not by the two and one-half-year period applying to medical malpractice actions; notwithstanding the fact that the death allegedly resulted from medical malpractice); *Ness v. St. Aloisius Hospital,* 301 N.W.2d 647, 652–53 (N.D.1981) (medical malpractice statute of limitations not applicable in wrongful death actions, even though wrongful death action is based upon medical malpractice); *Koler v. St. Joseph Hosp.,* 69 Ohio St.2d 477, 480, 432 N.E.2d 821, 824 (1982) (although malpractice actions governed by one-year statute of limitations, wrongful death action based on medical malpractice governed by two-year statute of limitations); *Shaughnessy v. Spray,* 55 Or.App. 42, 47, 637 P.2d 182, 187 (1981) ("[T]he wrongful death statute's limitation period applies to all wrongful death actions and the tort limitation period which would have been germane if death had not resulted does not apply."); *see also Presslaff v. Robins,* 168 N.J.Super. 543, 403 A.2d 939 (1979) (applied wrongful death statute of limitations to medical malpractice wrongful death action).

11. *See, e.g., Clark v. Singer,* 250 Ga. at 472, 298 S.E.2d at 486 ("No other cause of action is barred by the statute of limitations before death."); *Farmers Bank and Trust Co. v. Rice,* 674 S.W.2d at 512 ("[T]he statute of limitations for wrongful death actions runs from the death of the decedent, even though there was no viable action for personal injury or medical negligence or malpractice at the time of death."); *Gramlich v. Travelers Ins. Co.,* 640 S.W.2d 180, 186 (Mo.Ct.App.1982) ("The action for wrongful death is an action separate and distinct from the action for injuries to the decedent. It cannot arise and the statutory beneficiaries can take no action with respect to their claim until after death occurs. * * * [T]he statute of limitations applicable to actions for wrongful death is the only statute of limitations that could be invoked to defeat the claim of the plaintiffs in this case."); *Brosse v. Cumming,* 20 Ohio App.3d 260, 263, 485 N.E.2d 803, 807 (1984) ("the statute of limitations that may have barred the right of action of an injured person for damages before his death does not bar the right of the next of kin to maintain an action for wrongful death").

by the malpractice provisions.[12] In many of these states, causes of action for wrongful death derive from the decedent's· personal injury action so that the failure to file a personal injury claim within the statute of limitations period would subsequently time-bar a wrongful death action.[13] The application of the medical malpractice statute of limitations to the wrongful death claim is consistent with an accrual date as of the date of the injury.

12. *Medical malpractice statutes providing that the cause of action accrues on the date of injury: Reyes v. Kent General Hosp.,* 487 A.2d 1142, 1145–46 (Del.1984) ("The clear language of the [medical malpractice] statute dictates that whether the action be one for personal injury or personal injury resulting in death, the Statute of Limitations begins to run on the date of the alleged wrongful act or omission."); *Ash v. Stella,* 457 So.2d 1377, 1379 (Fla.1984) ("Before that time [1975] the statute of limitations governing malpractice suits did not apply to wrongful death actions. However, by defining an 'action for medical malpractice' to include a claim in tort for damages because of death, the legislature clearly intended this section to apply to wrongful death actions in cases where the basis for the action is medical malpractice."); *Frady v. Hedgcock,* 497 N.E.2d at 622 ("We hold that the statute of limitations for the Medical Malpractice Act is applicable instead of the time period imposed for wrongful death actions. Therefore, an action for wrongful death based upon medical malpractice must be filed within two years of 'the date of the alleged act, omission or neglect,' not within two years of the date of the death."); *Gover v. Bridges,* 486 So.2d 1117, 1119–20 (La.Ct.App.), *aff'd,* 497 So.2d 1364 (La.1986) ("LSA–R.S. 9:5628 is the specific statute setting forth the time limits for filing claims based on medical malpractice. The language of the statute is broad enough to include not only actions for personal injury due to malpractice, but also survival and wrongful death claims.... Therefore, such actions must be brought within one year from the date of the alleged act, omission or neglect, or within one year of discovery of the alleged act, omission or neglect, but in all events within three years of the date of the alleged act, omission or neglect."); *Hawkins v. Regional Medical Lab.,* 415 Mich. 420, 426, 329 N.W.2d 729, 735 (1982) ("We agree and expressly hold that in all actions brought under the wrongful death statute, the limitations period will be governed by the provision applicable to the liability theory of the underlying wrongful act. * * * Additionally, we hold that actions brought pursuant to M.C.L. § 600.2922; M.S.A. § 27A.2922 [death act] accrue as provided by the statutory provisions governing the underlying liability theory and not at the date of

"Date of injury" has been variously interpreted by yet another group of state courts. The Supreme Court of California holds that the cause of action for wrongful death accrues from the date of "injury" to the heirs caused by the death of the decedent, rather than from the date of the initial personal injury to the decedent. *Larcher v. Wanless,* 18 Cal.3d 646, 557 P.2d 507, 135 Cal.Rptr. 75 (1976). "[T]he cause of action for wrongful death, created by the Legislature, is not merely a continu-

death."); *DeRogatis v. Mayo Clinic,* 390 N.W.2d 773, 776 (Minn.1986) (certified question from federal district court) ("In summary, we hold, in answer to the question certified, that the 2–year limitation period for a wrongful death action predicated on alleged medical malpractice begins to run not on the date of death but when the limitation period for the underlying claim of medical malpractice by the decedent began to run."); *Kensinger v. Kippen,* 390 N.W.2d 815, 818 (Minn.App.1986) ("We hold that a cause of action for wrongful death based on medical malpractice accrues on the date of last treatment."); *Kern v. St. Joseph's Hosp., Inc.,* 102 N.M. 452, 697 P.2d 135 (1985) (wrongful death action accrued at date of last medical treatment); *Armijo v. Tandysh,* 98 N.M. 181, 183, 646 P.2d 1245, 1247 (N.M.Ct.App.1981) ("The specific inclusion of a wrongful death claim within the definition of a malpractice claim makes the limitation period of [N.M.Stat.Ann.] § 41–5–13 ... applicable to plaintiff's claim. The reason is that this specific inclusion controls over the general limitation period for wrongful death claim.").

13. *See, e.g., Reyes v. Kent General Hosp., supra,* note 12; *Ash v. Stella, supra,* note 12; *Hawkins v. Regional Medical Lab., supra,* note 12; *Kensinger v. Kippen,* 390 N.W.2d at 817 ("legislative intent to bar some wrongful death actions before they accrue in the interest of preventing litigation of stale claims"); *Armijo v. Tandysh,* 98 N.M. at 184, 646 P.2d at 1248 ("Under [N.M.Stat.Ann.] § 41–5–13 ..., the 'death' portion of a wrongful death claim could be barred by the limitation period before death occurred. This factual situation has arisen in the past. Any change to be made is a matter for the Legislature.").

The Illinois appellate courts, in considering whether the discovery rule is applicable to medical malpractice wrongful death cases, have applied the medical malpractice statute of limitations, although the precise issue of the instant case has not been addressed. *See Flores v. St. Mary of Nazareth Hosp.,* 149 Ill.App.3d 371, 103 Ill.Dec. 854, 502 N.E.2d 1 (1986); *Greenock v. Merkel,* 71 Ill.App.3d 958, 28 Ill.Dec. 96, 390 N.E.2d 78 (1979).

ation or survival of the decedent's claim for personal injuries, but is an entirely new cause of action created in the heirs and based on the death of the decedent as that death inflicted injury upon them." *Id.* at 649, 557 P.2d at 510, 135 Cal.Rptr. at 80. "We conclude that the word 'injury' in [Cal. Civ.Proc.Code] section 340.5 [the medical malpractice statute],[14] as that statute applies to wrongful death actions, must be read to refer to the wrongfully caused death of plaintiff's decedent." *Id.* at 653, 557 P.2d at 514, 135 Cal.Rptr. at 82 (footnote added). This conclusion follows prior judicial interpretation of the state's wrongful death action:

> Our law ... giving the heirs or personal representatives of a deceased person a right of action for his death, wrongfully produced through the act of another, was not known to the common law. It is purely a statutory right—a right with which, very clearly, the person for whose death the action may be maintained could possibly have no concern. It ought not to be necessary to say that the right does not, and in the very nature of things could not, under any possible view, exist during or in the lifetime of the person wrongfully injured, for the very fact of his death from wrongful violence at the hands of another itself and alone creates or establishes the foundation for the exercise of the right to sue....

*Marks v. Reissinger*, 35 Cal.App. 44, 47, 169 P. 243, 246 (1917).

The Nevada Supreme Court adopted this reasoning in *Gilloon v. Humana, Inc.*, 100 Nev. 518, 687 P.2d 80 (1984), stating: "We hold that in an action for wrongful death, the injury contemplated by [Nev.Rev.Stat. §] 41A.097 is the death of the malpractice victim and the two-year period of limitation begins to run from the time of death or the discovery thereof." *Id.* 687 P.2d at 81. The medical malpractice statute, Nev.Rev. Stat. § 41A.097, provides a cause of action for "[i]njury to or wrongful death of a person."

Both California and Nevada were guided by prior judicial interpretations of the wrongful death action in defining the term "injury." As the Arizona statutory provisions are worded similarly to those of California's and Nevada's provisions, we find their reasoning persuasive.

■ In Arizona, the survivors' legal right is not a derivation from nor a continuation of claims which formerly existed in the injured party.[15] *Mariscal, supra; Huebner, supra; Halenar, supra; Schoenrock, supra.* As an independent claim, the wrongful death action seeks not to recover for the personal injuries sustained by the party injured, but instead provides recovery for damages sustained by the survivors upon the death of the party injured.[16] "In enacting the wrongful death statute, ... the legislature explicitly recognized the legal right of the *survivors* to be compensated for *their loss* resulting from the victim's death."[17] *Summerfield v. Superior*

---

**14.** The medical malpractice statute at issue provided in relevant part:
> in an action for injury or death against a physician or surgeon ... based upon such person's alleged professional negligence ... [the statute of limitations shall be] four years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever first occurs.

**15.** Where medical malpractice results in the death of the patient, the cause of action for medical malpractice survives. A.R.S. § 14–3110 provides:
> Every cause of action ... shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person

injured, damages for pain and suffering of such injured person shall not be allowed.
A claim under the survival statute and a claim under the wrongful death statute are separate and distinct even though they originate from the same wrongful act. *Barragan v. Superior Court,* 12 Ariz.App. 402, 470 P.2d 722 (1970).

**16.** "As to the defense of the statute of limitations, ... the considerable majority of the courts have held that the statute runs against the death action only from the date of death, even though at that time the decedent's own action would have been barred while he was living." W. Page Keeton, PROSSER AND KEETON ON TORTS § 127 (5th ed. 1984).

**17.** Earlier Arizona cases consistently held that the cause of action for wrongful death was statutorily created. *See Bowslaugh v. Bows-*

*Court,* 144 Ariz. 467, 476, 698 P.2d 712, 721 (1985). The wrongful death cause of action can accrue only at the death of the party injured. *See, e.g., In re Lister,* 22 Ariz. 185, 195 P. 1113 (1921); *Gomez v. Leverton,* 19 Ariz.App. 604, 509 P.2d 735 (App. 1973); *Rogers v. Smith Kline & French Laboratories,* 5 Ariz.App. 553, 429 P.2d 4 (App.1967).

## VI

We hold that the wrongful death actions brought by the respective petitioners in the instant cases accrued on the date of death of their respective decedents. The petitioners had three years from that date within which to file their wrongful death actions. Accordingly, both actions were timely filed within the three-year statute of limitations. The trial courts improperly granted the defendants' motions for summary judgment based on the statute of limitations and, consequently, we reverse as to that issue and remand. The *Parich* memorandum decision is vacated. That portion of the *James* decision which is inconsistent with our opinion is also vacated.

■ We approve, however, of the court of appeals' affirmance of summary judgment as to Phoenix General Hospital on the standard of care issue. Neither in their brief to the court of appeals nor in their petition for review to this court did the *James* petitioners contest this independent ground for granting summary judgment as to Phoenix General Hospital. Phoenix General Hospital's request, pursuant to Rule 25 of the Rules of Civil Appellate Procedure, for reasonable attorney's fees incurred in preparing its response to the petition for review is granted.

*laugh,* 126 Ariz. 517, 617 P.2d 25 (1979); *Huebner v. Deuchle,* 109 Ariz. 549, 514 P.2d 470 (1973); *Halenar v. Superior Court,* 109 Ariz. 27, 504 P.2d 928 (1972). This premise has been scrutinized in recent cases. *See Summerfield v. Superior Court,* 144 Ariz. 467, 698 P.2d 712 (1985); *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984). We note that two recent cases have held the cause of action for wrongful death

GORDON, C.J., FELDMAN, V.C.J., and HOLOHAN and MOELLER, JJ., concur.

to be a fundamental right, protected against abrogation by Ariz. Const., art. 18, § 6. *See Davis v. Dow Chemical Corp.,* 819 F.2d 231, (9th Cir.1987) (applying Arizona law); *Anson v. American Motors Corp.,* No. 1 CA–CIV 7625 (Ariz.Ct.App. filed Mar. 31, 1987). This issue was not raised by the facts of the instant cases nor is it discussed in this opinion.